Bardis Vakili, CA SBN 247783
bardis@vakililegal.com
Law Office of Bardis Vakili, P.C.
P.O. Box 234160
Encinitas, CA 92023
Tel: (619) 483-3490

*Attorney for Plaintiff John M. Manley*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| John M. Manley,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>U.S. Customs and Border Protection,<br>　　　　　Defendant. | Case No.: 24-1427<br><br>**COMPLAINT [FREEDOM OF INFORMATION ACT]** |

## INTRODUCTION

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for declaratory, injunctive, and other appropriate relief, seeking transparency regarding the administration by United States Customs and Border Protection ("CBP") of a civil enforcement system for alleged violations of Trusted Traveler programs by motorists and their passengers at the land borders of the United States.

2. Many people approaching the United States border by car find the process extremely complicated and can easily make mistakes. Plaintiff John Manley is a prominent Los Angeles-based immigration attorney who regularly represents individuals impacted by CBP's enforcement of its Trusted Traveler programs, including people facing exorbitant CBP fines for inadvertently getting stuck in the northbound "SENTRI" lanes (lanes reserved for members of certain Trusted Traveler programs) from Mexico to the United States border. Mr. Manley has become an outspoken advocate regarding CBP's SENTRI lane enforcement at land ports of entry, seeking to educate the public about their existence so that such fines may be avoided.

3. The policies, procedures, adjudicative structure, and legal authority for CBP's financial penalty system for alleged SENTRI lane violations are not well understood by the public, travelers, or the immigration bar. In addition, it is not widely publicized how much financial benefit CBP gains from its enforcement efforts or what notice CBP provides to travelers so that they may avoid exorbitant fines. Furthermore, whether CBP's policies and practices differ at the northern and southern border warrants public scrutiny.

4. Opaque adjudicative systems such as CBP's financial penalty system for SENTRI lane violations invite arbitrary enforcement, to the detriment of the public generally and cross-border travelers specifically. Thus, to seek transparency and meaningful information, Plaintiff submitted, through counsel, a FOIA request

to CBP on September 25, 2023, seeking records related to CBP's enforcement practices regarding alleged SENTRI lane violations.

5. To date, and long past the statutory deadline to respond, CBP has provided no response. Meanwhile, Plaintiff continues to encounter members of the public against whom hefty fines are being extracted under CBP's punitive SENTRI enforcement system based on mistake or lack of awareness regarding SENTRI lane restrictions. To help the public better understand this system and to probe its lawfulness, Mr. Manley seeks an order requiring CBP to immediately search for and disclose records pursuant to Mr. Manley's FOIA request.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over the FOIA claim and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B). This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. §§ 701–706.

7. Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e) because Plaintiff resides and has his principal place of business in Los Angeles, California.

8. Because Defendant CBP failed to respond to Plaintiff's FOIA Request in the time required by statute, *see* 5 U.S.C. § 552(a)(6)(A)(i), Plaintiff has constructively exhausted all administrative remedies and is entitled to file suit with this Court to enforce compliance with FOIA. *See* 5 U.S.C. §§ 552(a)(4)(B) & (a)(6)(C)(i).

## PARTIES

9. Plaintiff John M. Manley is an immigration lawyer who resides and maintains his principal office in Los Angeles, California. He currently serves on the Executive Committee of the Southern California chapter of the American Immigration Lawyers' Association ("AILA"). He also serves on the AILA National Media and Advocacy committee as its Vice Chair, and he is a past Chair of the

Immigration Section of the Los Angeles County Bar Association. Mr. Manley maintains a blog for purposes of informing the public about pertinent immigration issues, and he has written extensively about CBP's operation of a financial penalty system for enforcing Trusted Traveler programs at the southern border of the United States.

10. Defendant CBP is a component of the U.S. Department of Homeland Security and an "agency" within the meaning of 5 U.S.C. §§ 551, 552(f)(1), and 702. It is headquartered in Washington, D.C. and has field offices throughout the country. Among other things, CBP operates at ports of entry to the United States through its Office of Field Operations, and it implements Trusted Traveler programs, including its civil penalty system for alleged violations of those program's requirements. On information and belief, CBP has possession, custody, and control of the records sought by Plaintiff.

## FACTUAL ALLEGATIONS

### I. Trusted Traveler Programs

11. The U.S. Department of Homeland Security operates Trusted Traveler programs, which allow travelers to utilize expedited lanes in U.S. airports and when crossing international borders, including the land borders of the United States. Applicants may be granted membership into one of these programs by applying, paying a fee, and passing appropriate background checks.

12. The Secure Electronic Network for Travelers Rapid Inspection ("SENTRI") program is a Trusted Traveler program operated by CBP that "allows expedited clearance for pre-approved, low-risk travelers upon arrival in the United States," including by permitting travelers to "enter the United States by using dedicated primary lanes into the United States at [s]outhern land border ports."[1] SENTRI pass holders also receive expedited processing at ports of entry along the

---

[1] CBP, "Secure Electronic Network for Travelers Rapid Inspection," https://www.cbp.gov/travel/trusted-traveler-programs/sentri.

northern border of the United States and through Transportation and Security Administration Pre-Check lanes in United States airports.

13. NEXUS is a program operated by CBP which provides many of the same benefits as SENTRI, but which only operates along the United States border with Canada.

14. Global Entry is another Trusted Traveler program. As relevant for this case, Global Entry members may utilize the same expedited processing lanes at land ports of entry that SENTRI and NEXUS program members may utilize.

## II. Vehicle entry to the United States from the southern border between California and Mexico

15. Along California's southern border, there are at least four ports of entry through which motorists may lawfully enter the United States: San Ysidro, Otay Mesa, Calexico, and Tecate. The San Ysidro and Otay Mesa ports of entry connect between Tijuana, Mexico and San Ysidro, California, about twenty miles south of the city of San Diego, California. The Tecate port of entry connects between Tecate, Mexico and the eastern part of San Diego County. The Calexico ports of entry (which contain an East and West section) connect between Mexicali, Mexico and Calexico, California. The San Ysidro port of entry is the largest of these: it has been described as the fourth busiest land border crossing in the world and the busiest in the western hemisphere.

16. Tens of thousands of motorists transit through these crossings every day. Many are part of the region's robust cross-border community: people who live in one country but who work, attend school, or regularly do business or shop in the other. However, a great many are unfamiliar with the process of entering the United States through the southern land ports of entry, including individuals retuning to the United States after a trip abroad for tourism, visiting friends or family, or for myriad other reasons.

17. As motorists approach the United States southern border from Mexico, there are certain traffic lanes dedicated specifically as SENTRI lanes, though the exact number may vary depending on the day, time, and degree of traffic congestion. Only vehicles in which all riders are members of an appropriate Trusted Traveler program may utilize these SENTRI lanes.

18. Depending on the day and time, the vehicle wait times at the ports of entry are often more than an hour – sometimes far more – for people in the general vehicle lanes. The wait times for SENTRI lanes are often shorter than for the general traffic lanes, but it is not uncommon for the SENTRI lanes to also have significant wait times.

19. There is some signage extending south from the United States border that advises motorists which lanes are SENTRI lanes and which are not. However, the traffic lines waiting to enter the United States regularly extend much further than the signage, particularly in Tijuana, where the traffic lines can wind through the city and beyond.

20. The directions for arriving at a port of entry from Mexico are notoriously confusing for many, especially in Tijuana, where roads frequently close or may be suddenly barricaded with minimal warning as Mexican officials attempt to direct the flow of traffic as the lines back up. As a result, electronic map or GPS applications or programs can be an unreliable method for navigating to the ports of entry from Mexico. They also sometimes send motorists on routes to avoid the significant traffic which ultimately do not provide access to the ports of entry. In addition, they frequently send motorists inadvertently into SENTRI lanes. Many lanes and roads in Mexico approaching the border are also poorly marked. Consequently, people routinely get lost or make wrong turns on their way while trying to get into the appropriate traffic lane for the port of entry.

21. The traffic lines, particularly in Tijuana, routinely become so congested that it is extremely difficult to change lanes. If motorists find themselves

1  inappropriately in a SENTI lane, it often becomes necessary to drive aggressively
2  or unsafely to change to an appropriate lane. Sometimes, motorists in this situation
3  stop moving forward in the SENTRI lane until they can change lanes, causing the
4  SENTRI lane to back up with angry motorists. Traffic police in Mexico patrol these
5  lanes and often issue tickets to individuals who back up the SENTRI lane in this
6  way or who drive unsafely while trying to leave it. As the lanes get closer to the
7  port of entry, there are physical barriers and/or medians between the SENTRI lanes
8  and general lanes, making it physically impossible to change lanes. In addition,
9  motorists and passengers frequently report initially encountering a CBP agent on
10 foot before entering the primary inspections kiosk. These agents reportedly do not
11 provide assistance to people mistakenly in the lane seeking to leave it, typically
12 directing them to drive forward instead.

13  22. Thus, many individuals who accidentally end up in a SENTRI lane –
14 whether because they got lost, the lines extended beyond the signage, or simply
15 misjudged which lane they should be in – have no choice but to arrive at the port of
16 entry in that lane, even though they are not in a Trusted Traveler program. The
17 mistake is likely to cost them thousands of dollars.

18  **III.  CBP's civil forfeiture policy for alleged SENTRI lane violations**

19  23. When a motorist who is not a member of a Trusted Traveler program
20 arrives at a port of entry in a SENTRI lane and CBP asserts its alleged authority to
21 impose a fine, CBP issues to the driver a "Notice of Penalty and Liquidated
22 Damages Incurred and Demand for Payment." The notice alleges violations of 19
23 U.S.C. § 1433, 19 U.S.C. § 1436, and 19 C.F.R. § 123.2, and it demands payment
24 of a financial penalty – usually $5,000 for a first violation and $10,000 for any
25 subsequent violation, citing 19 U.S.C § 1436. The notice provides that a person
26 seeking to contest the fine may file a petition for relief directly with CBP within 60
27 days through CBP's Fines, Penalties, and Forfeitures Officer, and that the process
28 includes the right to object if there are extenuating circumstances that led to the

alleged violation. If payment is not timely made, the notice warns that the case will be referred to the United States Department of Justice.

24. Sometimes passengers in vehicles who are not in charge of the vehicles are also cited and fined as described in the preceding paragraph. The notice will similarly allege that the passenger is in charge of the vehicle.

25. Payment is often extracted by CBP that day, though the enforcement varies: sometimes it is the full $5,000, sometimes less, sometimes $0.

26. It is not clear that the cited provisions actually provide the legal authority asserted by CBP. For instance:

    a. 19 U.S.C. § 1433(b) requires vehicles to arrive only at designated border crossing points. However, it is not clear that a vehicle that arrives at a designated port of entry, though mistakenly from the wrong lane, violates subsection (b).

    b. 19 U.S.C. § 1433(d) requires the person "in charge of" such a vehicle to present appropriate documentation to customs officials "as the Secretary may by regulation prescribe." However, it is not clear what paperwork is required by subsection (d), what if any regulations mandate the production of documents by SENTRI pass holders or people in SENTRI lanes, or that an inability to produce proof of membership in a Trusted Traveler program by someone mistakenly in a SENTRI lane necessarily violates this subsection. Even if there is a violation by the person in charge of the vehicle, a passenger not in charge of the vehicle would not appear to be in violation of this subsection.

    c. 19 U.S.C. § 1436 authorizes penalties and fines for failure to meet specific arrival and reporting requirements, cross-referencing myriad other statutes and regulations. Of the cross-referenced provisions, the only one that appears relevant to the SENTRI issue

       is a violation of 19 U.S.C. § 1433, discussed in the preceding sub-paragraphs.

    d. 19 C.F.R. § 123.2 authorizes civil penalties against, among other individuals, people in charge of vehicles who enter a vehicle into the U.S. anywhere other than a designated port of entry. However, it does not appear to apply to a vehicle that arrives at a designated port of entry, albeit inadvertently from an incorrect lane, nor to passengers who are not in charge of a vehicle.

27. CBP also sometimes alleges violation of section 15.8 of the Trusted Traveler program guidelines. However, these guidelines do not appear to be federal regulations and therefore cannot fall within 19 U.S.C. §1433(d). In any event, they obviously cannot apply to non-participants in the program, who have not agreed to them.

28. CBP agents have orally informed people being fined that they have committed multiple violations, even if the agents have no basis for the assertion.

29. CBP agents have detained people who inadvertently arrive at a SENTRI lane for hours, keeping them in handcuffs and/or shackles.

30. Travelers who wish to apply for relief from a SENTRI penalty can file a Petition for Remission of Forfeiture and Response to Seizure Notice with the CBP Fines, Penalties, and Forfeitures office. Travelers who are dissatisfied with the decision on that petition can then file a Supplemental Petition for Remission of Forfeiture and Response to Seizure Notice pursuant to 19 C.F.R §§171.61-64. This process appears similar to the process for challenging CBP civil asset forfeitures.

31. Plaintiff regularly represents clients who have been served by CBP with a notice and demand for payment, including by submitting petitions for remission and supplemental petitions to the CBP Fines, Penalties, and Forfeiture office. In his experience, the procedures, processes, and rules for the adjudication of these petitions and supplemental petitions are opaque. For instance, it is not clear

what statute authorizes the adjudicative system and/or arrest, who bears the burden of proof and by what standards, what mental state is required for a violation, what if any defenses might be available, and what avenues exist for judicial review. In addition, CBP agents will sometimes lower, mitigate, or forgive the amount of the fine, but the extent to which such a decision by CBP is discretionary is unclear, as is whether any articulable factors govern such a decision. There is also little information regarding how the supplemental petition process works and adjudications of these appeals can take longer than a year.

32. Agencies that arbitrarily interpret statutes or exceed their lawful authority can cause significant public harm. In this case, the damage is not theoretical. In addition to the substantial $5,000 fine, which can be devastating for individuals of limited means, affected travelers often suffer emotional scars as many have reported being handcuffed, held in secondary, and treated unprofessionally by CBP agents. Transparency is required to ensure CBP is applying its SENTRI enforcement authority lawfully.

33. To the extent CBP's SENTRI enforcement practices are lawful, a better understanding and wide dissemination of the policies and procedures governing this system will aid the public in avoiding mistaken use of the SENTRI lane, which will ultimately assist the government in achieving greater compliance with SENTRI lane requirements. It will also assist immigration attorneys seeking to assist impacted individuals.

34. The volume of cases processed through CBP's opaque SENTRI lane penalty system raises questions of public concern regarding how much money CBP collects from its enforcement efforts and whether enough is being done to notify travelers and prevent violations.

35. Furthermore, any differences between the manner of CBP's SENTRI enforcement at the southern border compared to its NEXUS enforcement at the

northern border are important for the public to know, to ensure the rules are not applied arbitrarily or based on impermissible factors.

36. Thus, through his FOIA request, Plaintiff seeks to shine a light on the process to the benefit of the general public, as well as the government.

**37. Plaintiff's FOIA Request and Defendant's Failure to Respond**

38. The Freedom of Information Act, 5 U.S.C. § 552, "focuses on the citizens' right to be informed about 'what their government is up to'" by fostering the release of "[o]fficial information that sheds light on an agency's performance of its statutory duties." *DOJ v. Reporters Comm. For Freedom of the Press*, 489 U.S. 749, 773 (1989) (citation omitted). "[D]isclosure, not secrecy, is the dominant objective" of FOIA. *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (internal quotations and citation omitted).

39. Any member of the public may make a request under FOIA for records to an agency of the United States. FOIA requires an agency to timely disclose all records responsive to a FOIA request that do not fall within one of nine narrowly construed statutory exemptions. 5 U.S.C. §§ 552(a)(3)(A), 552(b)(1)-(9).

40. On September 25, 2023, Plaintiff, through counsel, submitted a FOIA request via CBP's online FOIA portal (www.securerelease.us) seeking, from CBP headquarters and the local field offices of its Office of Field Operations, records related to the policies, practices, complaints, and data regarding CBP's system for enforcing penalties against alleged SENTRI and NEXUS lane violators.

41. Plaintiff specified that responsive records should include:

(1) All policies and/or formal or informal guidance related to the treatment of, imposition of penalties (including fines, demands for payment, and/or demands for and/or impounding of automobiles) against, and/or custody, release, and inspection of:

11
COMPLAINT [FREEDOM OF INFORMATION ACT]

     a. drivers of a vehicle who do not have the SENTRI pass or are not members of the Trusted Traveler program and who presented for inspection at a port of entry through the SENTRI lane;

     b. passengers of a vehicle who do not have the SENTRI pass or are not members of the Trusted Traveler program, where the vehicle presented for inspection at a port of entry through the SENTRI lane;

(2) Records identifying and/or interpreting the statutory authority for the imposition of penalties for unauthorized use of SENTRI lanes;

(3) All policies and/or formal or informal guidance related to any discretion in enforcement in the imposition of SENTRI lane penalties, including whether enforcement is through strict liability, graduated enforcement based on the number of violations (such as "three strikes" enforcement), or other enforcement mechanism, as well as where and how such penalties are administered;

(4) All policies and/or informal guidance followed by San Diego Fines, Penalties and Forfeiture Officer(s) in responding to or adjudicating Petitions for Remission of Forfeiture and Response to Seizure Notices, including standards for denying/approving relief or mitigating penalties in response to such petitions;

(5) All policies and/or formal or informal guidance related to the provision, or lack of provision, of warnings, advisals, and/or notice to the public regarding penalties for unauthorized use of the SENTRI lanes, including whether those penalties are to be enforced through strict liability, graduated enforcement based on the number of violations (such as "three strikes" enforcement), or other enforcement mechanism, as well as any advisals themselves and the location and manner that any warnings, advisals, and/or notice are provided;

(6) Statistics reflecting the total number of fines and/or demands for payment issued by CBP for unauthorized use of the SENTRI lane, the dollar amount of each fine, the location where such fines were incurred, and the frequency of fines issued since January 1, 2020;

(7) Complaints, whether formal or informal, filed since January 1, 2020 by drivers or passengers who do/did not hold a SENTRI pass or are/were not members of the Trusted Traveler program for use of the SENTRI lane based on the imposition of penalties or demands for payment pursuant to 19 U.S.C. §§ 1618, 1623;

(8) All policies and/or formal or informal guidance related to the treatment of, imposition of penalties (including fines, demands for payment, and/or demands for and/or impounding of automobiles) against, and/or custody, release, and inspection of:

    a. drivers of a vehicle who do not have the NEXUS pass or are not members of the Trusted Traveler program and who presented for inspection at a port of entry through the NEXUS lane;

    b. passengers of a vehicle who do not have the NEXUS pass or are not members of the Trusted Traveler program, where the vehicle presented for inspection at a port of entry through the NEXUS lane; and

(9) Statistics reflecting the total number of fines and/or demands for payment (whether pursuant to 19 U.S.C. § 1618, 1623, or otherwise) issued by CBP for unauthorized use of the NEXUS lane, the dollar amount of each fine, the location where such fines were incurred, and the frequency of fines issued since January 1, 2020.

42. Plaintiff also sought a fee waiver under 5 U.S.C. § 552(a)(4)(A)(iii) on the grounds that (1) disclosure of the requested records will contribute significantly to the public understanding of government operations regarding the SENTRI and

NEXUS lanes, and (2) Plaintiff has the capacity, intent, and demonstrated ability to disseminate the requested information to a broad cross-section of the public, through his leadership and media liaison roles with AILA and the Los Angeles County Bar Association and through his blog.[2]

43. An agency that receives a FOIA request must respond within twenty business days after the receipt of the request. 5 U.S.C. § 552(a)(6)(A)(i). In its response, the agency must inform the requestor whether it intends to comply with the request, provide reasons for its determination, and inform the requestor of his or her right to appeal the determination. *Id*.

44. The 20-day deadline to respond to Plaintiff's request expired on October 16, 2023. As of the date of the filing of this Complaint, CBP has not responded to Plaintiff's request.

45. On November 28, 2023, in an effort to elicit a response without resorting to litigation, Plaintiff submitted, through counsel, a message on CBP's online FOIA platform, which has a specific link for submitting messages related to requests. The message asked for a status update on Plaintiff's request and offered to provide any necessary additional information. To date, Defendant CBP has not responded to this message.

---

[2] FOIA requires that documents shall be furnished without charge or at a reduced charge if disclosure of the information is in the public interest because it "is likely to contribute significantly to public understanding of the operations or activities of the government" and is "not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). A requestor may also seek a waiver of search and review fees on the grounds that the requestor is a "representative of the news media" and the records are not sought for a commercial purpose. *See* 5 U.S.C. § 552(a)(4)(A)(ii). A representative of the news media is "any person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." *Id*.

46. On January 9, 2024, Plaintiff again submitted, through counsel, a request for a status update on CBP's online FOIA platform. To date, Defendant CBP has not responded to this message.

47. To date, Defendant CBP has not communicated with Plaintiff at all about his request. As of the date of the filing of this Complaint, Defendant's online platform still lists Plaintiff's request status as awaiting "Initial Determination" and that his request for a fee waiver is still "Pending Decision." Defendant CBP therefore has constructively denied Plaintiff's request, and he therefore has exhausted his administrative remedies pursuant to 5 U.S.C. §552(a)(6)(C)(i).

48. A district court has jurisdiction to enjoin the agency from withholding records, to order production of records that are subject to disclosure, and to grant a public interest fee waiver of any costs associated with the production of such records. 5 U.S.C. §§ 552(a)(4)(B), 552(a)(4)(A)(iii).

## CLAIM FOR RELIEF
### (Violation of the Freedom of Information Act, 5 U.S.C. § 552)

49. Plaintiff realleges and incorporates, as though fully set forth herein, each and every allegation contained in the above paragraphs.

50. The records requested by Plaintiff are subject to release pursuant to FOIA, and Defendant has not alleged that any exemption applies.

51. Defendant CBP is an agency subject to FOIA.

52. Defendant CBP has failed to comply with its statutory duty to timely respond to Plaintiff's request for records within twenty days, in violation of FOIA, 5 U.S.C. § 552(a)(6)(A).

53. Defendant CBP has failed to undertake a search reasonably calculated to uncover all relevant records sought by Plaintiff's request and to make responsive records promptly available to Plaintiff, in violation of FOIA, 5 U.S.C. § 552(a)(3)(A).

54. Defendant CBP has failed to grant Plaintiffs' request for a limitation of fees as to the Request, in violation of FOIA, 5 U.S.C. § 552(a)(4)(A), and applicable regulations.

55. Because Defendant CBP has failed to comply with FOIA's statutory deadlines, Plaintiff has constructively exhausted his administrative remedies. 5 U.S.C. § 552(a)(6)(C)(i).

56. Plaintiff is therefore entitled to injunctive and declaratory relief requiring Defendant CBP to promptly conduct a reasonable search for records responsive to Plaintiff's request and to make responsive records promptly available free of charge. *See, e.g.,* 5 U.S.C. § 552(a)(4)(B).

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Declare, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that Defendant CBP is in violation of the Freedom of Information Act and that the records sought by Plaintiff's request, as described above, are public records pursuant to FOIA and must be disclosed, with the exception of documents subject to any exemptions Defendant may prove are applicable;

B. Issue an injunction or other appropriate order requiring Defendant CBP to conduct a reasonable search for records responsive to Plaintiff's request and to promptly provide copies of any such records that it fails to establish are specifically exempt from disclosure under FOIA in electronic format to Plaintiff at no charge;

C. To the extent Defendant CBP seeks to withhold records from disclosure under a FOIA exemption, order Defendant CBP to prepare an index pursuant to *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974);

D. Award Plaintiff the costs incurred in this action and reasonable attorneys' fees pursuant to 5 U.S.C. § 552(a)(4)(E); and

1        E.     Grant such other relief as the Court may deem just and proper.

DATED this 21st day of February, 2024.

Respectfully submitted,

Law Office of Bardis Vakili P.C.

*/s/ Bardis Vakili*
Bardis Vakili

*Counsel for Plaintiff*

COMPLAINT [FREEDOM OF INFORMATION ACT]