1  BILAL A. ESSAYLI
   United States Attorney
2  DAVID M. HARRIS
   Assistant United States Attorney
3  Chief, Civil Division
   JOANNE S. OSINOFF
4  Assistant United States Attorney
   Chief, Complex and Defensive Litigation Section
5  ALEXANDER L. FARRELL (Cal. Bar No. 335008)
   Assistant United States Attorney
6        Federal Building, Suite 7516
         300 North Los Angeles Street
7        Los Angeles, California 90012
         Telephone: (213) 894-5557
8        Facsimile: (213) 894-7819
         E-mail: Alexander.Farrell@usdoj.gov
9
   Attorneys for Defendant
10 U.S. Customs and Border Protection

11                    UNITED STATES DISTRICT COURT

12              FOR THE CENTRAL DISTRICT OF CALIFORNIA

13

14 JOHN M. MANLEY,                          No. 2:24-cv-01427-JAK-SK

15          Plaintiff,                       **DEFENDANT U.S. CUSTOMS AND
                                             BORDER PROTECTION'S NOTICE
16          v.                               OF MOTION AND MOTION FOR
                                             SUMMARY JUDGMENT**
17 U.S. CUSTOMS AND BORDER
   PROTECTION,                               (Concurrently filed with Separate Statement
18                                           of Uncontroverted Facts, Declarations in
            Defendant.                       Support, *Vaughn* Index, and Proposed
19                                           Judgment)

20                                           Hearing Date:   June 2, 2025
                                             Hearing Time:   8:30 a.m.
21                                           Ctrm:           10C

22                                           Honorable John A. Kronstadt
                                             United States District Judge
23

24

25

26

27

28

# **TABLE OF CONTENTS**

DESCRIPTION                                                                                    PAGE

**Contents**

TABLE OF AUTHORITIES ................................................................................. iii

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT .................... v

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

I.     INTRODUCTION ................................................................................ 1

II.    BACKGROUND AND PROCEDURAL HISTORY ................................ 1

       A.    Plaintiff's Nine-Part FOIA Request – Dated September 25, 2023 ............ 1

       B.    CBP's Reasonable Search for and Production of Responsive Records ....... 2

             1.    Department of Homeland Security's Decentralized FOIA System ................................................................................ 2

             2.    CBP's FOIA Processing Division ................................... 3

             3.    The CBP's Seized Assets and Case Tracking System ("SEACATS") ............................................................ 4

             4.    CBP's Processing of Plaintiff's FOIA Request ............... 4

       C.    Summary of Documents Produced .................................................. 5

       D.    The *Vaughn* Index and the Parties' Stipulation to the Scope of Records in Dispute at Summary Judgment ......................................... 6

III.   ARGUMENT ...................................................................................... 7

       A.    CBP's Processing and Search Were Reasonably Calculated to Uncover All Responsive Records .................................................... 8

       B.    Based on the Stipulated Documents at Issue, CBP Properly Withheld Information under Applicable FOIA Exemptions ................................. 10

             1.    The Information Redacted by CBP is Exempt under 5 U.S.C. § 552(b)(6) and (b)(7)(C) .......................................... 10

             2.    The Information Redacted by CBP is Exempt under 5 U.S.C. § 552 (b)(7)(E) ............................................... 12

             3.    CBP Has Released All Reasonably Segregable Portions of the Responsive Records .................................................. 14

       C.    Any Rule 56(d) Request Should Be Denied Because CBP's Supporting Declarations Are Sufficiently Detailed ......................... 14

1

## <u>TABLE OF CONTENTS (CONTINUED)</u>

2

<u>DESCRIPTION</u>                                                                                  <u>PAGE</u>

3

IV.   CONCLUSION ............................................................................... 15

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

DESCRIPTION                                                                    PAGE

**Cases**

*Blackwell v. FBI*,
    646 F.3d 37 (D.C. Cir. 2011) ...................................................................... 13

*Citizens Comm'n on Hum. Rights v. State Dept.*,
    45 F.3d 1325 (9th Cir. 1995) ........................................................................ 8

*FBI v. Abramson*,
    456 U.S. 615 (1982) ...................................................................................... 7

*Frank v. U.S. Dep't of Just.*,
    941 F. Supp. 4 (D.D.C. 1996) ...................................................................... 9

*Gatson v. FBI*,
    2017 WL 3783696 (D.N.J. Aug. 31, 2017) ................................................ 13

*Hamdan v. U.S. Dep't of Justice*,
    797 F.3d 759 (9th Cir. 2015) ...................................................................... 14

*Hunt v. FBI*,
    972 F.2d 286 (9th Cir. 1992) ...................................................................... 12

*Iturralde v. Comptroller of Currency*,
    315 F.3d 311 (D.C. Cir. 2003) ...................................................................... 8

*John Doe Agency v. John Doe Corp.*,
    493 U.S. 146 (1989) ...................................................................................... 7

*Johnson v. Exec. Office for U.S. Attorneys*,
    310 F.3d 771 (D.C. Cir. 2002) .................................................................... 14

*Kissinger v. Reporters Comm. For Freedom of the Press*,
    445 U.S. 136, (1980) ...................................................................................... 9

*Lahr v. Nat'l Transp. Safety Bd.*,
    569 F.3d 964 (9th Cir. 2009) ....................................................... 7, 8, 11, 12

*Nation Magazine v. U.S. Customs Serv.*,
    71 F.3d 885 (D.C. Cir. 1995) ........................................................................ 8

*National Ass'n of Retired Fed. Employees v. Horner*,
    879 F.2d 873 (D.C. Cir. 1989) .................................................................... 10

*Oglesby v. U.S. Dep't of Army*,
    920 F.2d 57 (D.C. Cir. 1990) ..................................................................... 8, 9

*Pac. Fisheries Inc. v. United States*,
    539 F.3d 1143 (9th Cir. 2008) .................................................................... 14

*Pomares v. U.S. Dep't of Veterans,*
    *Affs.*, 2023 WL 2378939 (S.D. Cal. Jan. 6, 2023) .................................... 12

*Reed v. NLRB*,
    927 F.2d 1249 (D.C. Cir. 1991) ............................................................ 10, 11

*SafeCard Servs. Inc. v. SEC*,

iii

926 F.2d 1197 (D.C. Cir. 1991).................................................................8

*Sellers v. IRS,*
    2009 WL 700647 (D. Ore. 2009).........................................................11

*Shapiro v. DOJ,*
    893 F.3d 796 (D.C. Cir. 2018)............................................................13

*Singh v. Fed. Aviation Admin.,*
    783 F. App'x 753 (9th Cir. 2019) .......................................................9

*U.S. Dep't. of State v. Ray,*
    502 U.S. 164 (1991) ...........................................................................12

*U.S. Dep't of Defense v. Fed. Lab. Relations Auth.,*
    510 U.S. 487 (1994) ...........................................................................12

*United States Dep't of Justice v. Reporters Comm. for Freedom of the Press,
    (Reporters Comm.),* 489 U.S. 749 (1989)..................................... 11, 12

*United States Dep't of State v. Washington Post Co.,*
    456 U.S. 595 (1982) ..................................................................... 10, 11

*Vaughn v. Rosen,*
    484 F.2d 820 (D.C. Cir. 1973).............................................................v

*Willamette Indus., Inc. v. United States,*
    689 F.2d 865 (9th Cir. 1982)..............................................................14

*Yonemoto v. Dep't of Veterans Affairs,*
    686 F.3d 681 (9th Cir. 2012)...............................................................v

*Zemansky v. EPA,*
    767 F.2d 569 (9th Cir. 1985)...............................................................8

**Statutes**

5 U.S.C. § 552...................................................................................i, 14
5 U.S.C. § 552(b)(6)................................................................... passim
5 U.S.C. § 552(b)(7)(C) ................................................................. 7, 11
5 U.S.C. § 552(b)(7)(E) ............................................................ 6, 7, 13

**Rules**

Fed. R. Civ. P. 56............................................................................ v, 15

**Regulations**

6 C.F.R. § 5.1(c) .............................................................................. 3, 6
6 C.F.R. § 5.3(a)(1)...............................................................................2

## NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

PLEASE TAKE NOTICE that, on June 2, 2025 at 8:30 a.m., or as soon thereafter as they may be heard, Defendant U.S. Customs and Border Protection will bring for hearing this motion for an order granting summary judgment in favor of the Defendant. This Motion will be made before the Honorable John A. Kronstadt, United States District Judge, Courtroom 10C, located at First Street Federal Courthouse, 350 W. 1st Street, Los Angeles, CA 90012.

Defendant brings this motion under Federal Rule of Civil Procedure 56 on the grounds that the Defendant has fully complied with its obligations under the Freedom of Information Act ("FOIA") and based on a court-approved stipulation [Dkt. 26-27], in response to Plaintiff John M. Manley's FOIA Request. Because Plaintiff cannot raise a genuine dispute of material fact or otherwise prevail under the FOIA on his single claim for "violation of the FOIA," Defendant is therefore entitled to judgment as a matter of law.

This motion is made upon this Notice, the attached Memorandum of Points and Authorities, the declarations of Patrick A. Howard, Lisa K. Santana Fox, and Alexander L. Farrell, the *Vaughn* Index,[1] the Separate Statement of Uncontroverted Facts, and all pleadings, records, and other documents on file with the Court in this action, and upon such oral argument as may be presented at the hearing of this motion.

This motion is made following the conference of counsel pursuant to Local Rule 7-3 which was held on March 28, 2025.

---

[1] A *Vaughn* Index is a document that is prepared in litigation to justify withholding of information under the FOIA. The term arose from the case of *Vaughn v. Rosen*, 484 F.2d 820, 823-25 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974), in which such an index was required to determine the validity of the agency's withholdings. *See also Yonemoto v. Dep't of Veterans Affairs*, 686 F.3d 681, 688 (9th Cir. 2012) (describing requirements for *Vaughn* Index).

1    Dated: April 7, 2025                Respectfully submitted,

2                                        BILAL A. ESSAYLI
                                         United States Attorney
3                                        DAVID M. HARRIS
                                         Assistant United States Attorney
4                                        Chief, Civil Division
                                         JOANNE S. OSINOFF
5                                        Assistant United States Attorney
                                         Chief, Complex and Defensive Litigation Section
6

7                                          /s/ Alexander L. Farrell
8                                        ALEXANDER L. FARRELL
                                         Assistant United States Attorney
9
                                         Attorneys for Defendant
10                                       U.S. Customs and Border Protection

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendant U.S. Customs and Border Protection ("Defendant" or "CBP") has complied fully with its obligations under the Freedom of Information Act with respect to Plaintiff John Manley's September 25, 2023, nine-part FOIA Request (the "FOIA Request"). As a result, CBP is entitled to summary judgment.

First, CBP, reviewed the FOIA Request upon receipt and, consistent with CBP's FOIA processing and regulations, determined which subcomponents were most likely to have responsive records. CBP then directed those subcomponents to complete a search for records potentially responsive to the Plaintiff's FOIA Request for "policies, practices, complaints, and data regarding CBP's system for enforcing penalties against alleged SENTRI and NEXUS lane violators." Dkt. 1 (Complaint) ¶ 40.

Second, CBP properly responded to the FOIA Request by (a) conducting an adequate search reasonably calculated to uncover all responsive documents based on the terms of the FOIA Request and (b) processing the records found following its search and applying appropriate exemptions under the FOIA – specifically Exemptions 6, 7(C), and 7(E). *See* 5 U.S.C. §§ 552(b)(6), 7(C), and 7(E).

Therefore, as there is not a genuine dispute of material fact, the Court should grant this motion and enter judgment in Defendant's favor.

## II.    BACKGROUND AND PROCEDURAL HISTORY

### A.    Plaintiff's Nine-Part FOIA Request – Dated September 25, 2023

On September 25, 2023, Plaintiff, through counsel, submitted a FOIA request via CBP's online FOIA portal located at www.securerelease.us. Uncontroverted Fact ("UF") 1. Plaintiff's FOIA Request sought nine categories of records related to the policies, practices, complaints, and data regarding CBP's system for enforcing penalties against

1

1  alleged SENTRI and NEXUS lane violators.[2] UF 1-2.

2      On February 21, 2024, Plaintiff filed this action. *See* Dkt. 1. Plaintiff alleges that

3  CBP failed to adequately search for and promptly release responsive records and that

4  CBP is wrongfully withholding documents. *See generally, id*. On August 13, 2024, CBP

5  filed an answer to the Complaint. Dkt. 16

6      **B.    CBP's Reasonable Search for and Production of Responsive Records**

7          1.    Department of Homeland Security's Decentralized FOIA System

8  CBP, an agency within the Department of Homeland Security ("DHS") has a

9  decentralized system for responding to FOIA requests, as explained in its regulations:

10     DHS has a decentralized system for responding to FOIA requests, with each

11     component designating a FOIA office to process records from that

12     component. All components have the capability to receive requests

13     electronically, either through email or a web portal. To make a request for

14     DHS records, a requester should write directly to the FOIA office of the

15     component that maintains the records being sought. A request will receive

16     the quickest possible response if it is addressed to the FOIA office of the

17     component that maintains the records sought.... Each component's FOIA

18     office and any additional requirements for submitting a request to a given

19     component are listed in appendix A to this part. These references can all be

20     used by requesters to determine where to send their requests within DHS.

21  6 C.F.R. § 5.3(a)(1).

22      [2] The Department of Homeland Security has established the "Trusted Traveler

23  Programs," risk-based programs that facilitate the entry of pre-approved travelers at U.S.
    airports and Ports of Entry when crossing international borders of the United States. The

24  Department established the Secure Electronic Network for Travelers Rapid Inspection,
    also known as the "SENTRI" program, is a subset of the Trusted Traveler Programs. The

25  SENTRI program is risk-based program that facilitates the entry of pre-approved
    travelers to the United States from the country of Mexico. The Department has also

26  established the NEXUS program, another subset of the Trusted Traveler Programs. The

27  NEXUS program is risk-based program that facilitates the entry of pre-approved
    travelers to the United States from the country of Canada.

28

2

DHS's decentralized FOIA system results in each component within DHS having a designated FOIA office that processes records from that specific component. *See* 6 C.F.R. § 5.1(c).

### 2. CBP's FOIA Processing Division

Broadly, the FOIA Division at CBP reviews FOIA requests, determines whether responsive records exist, and, if so, whether they can be released in accordance with the FOIA. UF 3. In processing such requests, the FOIA Division consults with CBP personnel and, when appropriate, with other components in the DHS, as well as other Executive Branch agencies. UF 4.

When CBP receives a FOIA request that reasonably describes the records requested and otherwise complies with the Agency's rules governing the procedures for FOIA requests, CBP must search for and retrieve potentially responsive records. UF 5. Based upon the requester's description of the records being sought, and the FOIA Division's knowledge of the various CBP subcomponents' missions, the FOIA division identifies the subcomponent(s) likely to possess responsive records. UF 6. Then the FOIA division tasks the appropriate subcomponent(s) to conduct the necessary searches. UF 7.

Once the FOIA Division determines the appropriate subcomponent(s) for a given request, it assigns the request to the Point(s) of Contact ("POC(s)") in each of those subcomponents and instructs them to conduct a search for responsive records. UF 8. The POC(s) then review the FOIA request, along with any case-specific instructions provided by the FOIA Division. UF 9. The POC(s) use their experience and knowledge of their subcomponent's practices and activities to forward the FOIA request and instructions to the individual employee(s) or office(s) within the subcomponent that they believe are reasonably likely to have responsive records. UF 10.

Then the FOIA Division instructs individuals and offices to conduct searches of the file systems (including both paper and electronic files) that in their judgment, based on their knowledge of the manner in which they routinely keep records, would be the

1  most likely systems to contain responsive documents. UF 11.

2      Once those searches are completed, the individual(s) and program office(s)

3  provide any potentially responsive records along with a completed search form to the

4  assigned FOIA processor. UF 12. The FOIA processor then reviews the collected records

5  for responsiveness, application of appropriate FOIA exemptions, and the necessity of

6  any referrals and/or consultations. UF 13.

7          3.    The CBP's Seized Assets and Case Tracking System ("SEACATS")

8      CBP's subcomponents use various systems to maintain records, such as personal

9  and shared drives, CBP systems such as SEACATS, and paper files. UF 11, 14.

10  SEACATS is the information system for records of import and export, fines and

11  penalties, and other enforcement incidents related to CBP and U.S. Immigration and

12  Customs Enforcement ("ICE") and Homeland Security Investigations. UF 14. The

13  system tracks the physical inventory and records disposition of all seized assets, as well

14  as the administrative and criminal cases associated with those seizures. UF 15.

15  SEACATS functions as the case management system capturing the relevant information

16  and adjudication of the legal outcomes of all fines, penalties, and liquidated damages.

17  UF 16. The SEACATS also serves as the financial system of record for all collections

18  related to these enforcement actions. UF 17. SEACATS holds the raw data of the records

19  mentioned above. UF 18. SEACATS does not hold or produce statistics. UF 19.

20  SEACATS is managed and operated by CBP's Office of Field Operations ("OFO") for

21  use by the OFO Office of Fines, Penalties, and Forfeitures ("FP&F"). UF 20.

22          4.    CBP's Processing of Plaintiff's FOIA Request

23      CBP FOIA Division staff considered which CBP databases were likely to hold

24  information responsive to Plaintiff's FOIA request, based upon a careful review of the

25  content of the request itself and the nature of the records sought. UF 39. The FOIA

26  Division determined that OFO, Office of Trade Rules and Regulations ("R&R"), Office

27  of the Commissioner Compliments and Complaints Branch, were the offices that most

28  likely maintained records. UF 40.

OFO is responsible for all activity, including reviewing applicants for admission, at the port-of-entry ("POE") along international borders, airports, and seaports, and Plaintiff's FOIA request inquiries about POE programs SENTRI and NEXUS. UF 41. OFO then determined the various subcomponents that most likely maintained information responsive to Plaintiff's FOIA request, including the Admissibility and Passenger Programs ("APP"), the Trusted Traveler Program ("TTP"), and FP&F. UF 42. After receiving instruction from the FOIA Division, the APP and the TTP subcomponents identified responsive records to Plaintiff's Request. UF 43.

On April 2, 2024, FP&F's Director, Lisa K. Santana Fox, reviewed Plaintiff's request and assigned the search of records to a SEACATS program manager within FP&F at OFO Headquarters. UF 21.

FP&F used the key-word search terms "SENTRI" and "NEXUS" which were selected by FP&F management based on a review of Plaintiff's FOIA request and consideration of what terms FP&F reasonably anticipated would "hit" upon potentially responsive documents and because of terminology used by the subcomponent. UF 22. FP&F conducted its search for responsive records using these broader search terms but excluded the term "nexus to the border." UF 22. Additionally, parameters were set by dates and incident type. UF.

Based on the search, the FP&F did not find "Statistics reflecting the total number of fines and/or demands for payment issued by CBP for unauthorized use of the SENTRI lane, the dollar amount of each fine, the location where such fines were incurred, and the frequency of fines issued since January I, 2020." UF 23-24.

### C.    Summary of Documents Produced

CBP produced records in response to Plaintiff's FOIA request on four separate productions between June 2024 and December 2024. UF 25-34.

On June 24, 2024, CBP provided its first response and produced to the Plaintiff: records titled as Mitigation Guidelines Fines Penalties Forfeitures and Liquidated Damages, Feb 2004 (253 pages) whose custodian is FP&F; SENTRI no tag override IP

5

(2 page) whose custodian is TTP; and TTP Reconsideration Fact Sheet (2 pages) whose custodian is TTP. *Id.*

On June 26, 2024, CBP provided its second response and produced to the Plaintiff: records titled as 2022 Final TTP Handbook HB 3300-011 (NTC-TTV) (78 pages) whose custodian is APP; Memo TTP Handbook JUNE2024 (1 page) whose custodian is APP. *Id.*

On October 10, 2024, CBP provided its third response and produced to the Plaintiff: 64 pages determined to be partially releasable whose custodian is Compliments and Complaints Branch. *Id.*

On December 5, 2024, CBP provided its fourth and final response and produced to the Plaintiff: 27 pages determined to be partially releasable whose custodian is R&R; 1 page of the TTP Handbook (unredacted). CBP also provided the following publicly available website link to general statistical records: https://www.cbp.gov/newsroom/stats/trade. *Id.*

**D.    The *Vaughn* Index and the Parties' Stipulation to the Scope of Records in Dispute at Summary Judgment**

Counsel for the parties met and conferred about the descriptions of the withheld information and basis for withholding that would be included in the anticipated *Vaughn* Index. Dkt. 26. On March 26, 2025, the parties entered a Stipulation, that the Court approved, as to the scope of the *Vaughn* Index of records that remain at issue in this case. Dkt. 27. Those records are identified in the chart below, which was included in the Stipulation and in the Court's Order:

| FOIA Production Document | Page Range and/or Document Section | Asserted FOIA Exemption |
|---|---|---|
| Trusted Travelers Program ("TTP") Handbook | Bates Pages 41-44; Handbook Section 14 | 5 U.S.C. § 552(b)(7)(E) |
| TTP Handbook | Bates Pages 46-47, 49-52; Handbook Sections 16.1-16.2, 16.5 | 5 U.S.C. § 552(b)(7)(E) |
| TTP Handbook | Bates Pages 54-55; | 5 U.S.C. § 552(b)(7)(E) |

| | Handbook Sections 16.10-16.11 | |
|---|---|---|
| SENTRI no tag override (Apr. 30, 2018) | Bates Pages 1-2 | 5 U.S.C. § 552(b)(7)(E) |
| Memo TTP Handbook | Bates Page 1 | 5 U.S.C. § 552(b)(6); 5 U.S.C. § 552(b)(7)(C) |

Dkt. 26-27. The *Vaughn* is based on the specific pages that Plaintiff stated he intended to challenge. After the parties met and conferred over the exemptions Plaintiff intended to challenge via summary judgment, and upon review of the arguments raised during the conference of counsel, CBP has prepared a finalized *Vaughn* Index that is filed concurrently with this Motion.

## III.   ARGUMENT

"FOIA was enacted to facilitate public access to Government documents." *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009) (quotation omitted). The statute represents a balance struck by Congress "between the right of the public to know and the need of the Government to keep information in confidence." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989). Congress recognized "that legitimate governmental and private interests could be harmed by release of certain types of information and provided nine specific exemptions under which disclosure could be refused." *FBI v. Abramson*, 456 U.S. 615, 621 (1982); *see also Lahr*, 569 F.3d at 973 ("FOIA contemplates that some information may legitimately be kept from the public. The statute contains nine enumerated exemptions allowing the government to withhold documents or portions of documents."). While these exemptions are to be "narrowly construed," *Abramson*, 456 U.S. at 630, courts must not fail to give them "meaningful reach and application." *John Doe*, 493 U.S. at 152.

CBP has satisfied its obligations under FOIA with respect to Plaintiff's Request. As the Declarations of Patrick A. Howard and Lisa K. Santana Fox and the incorporated *Vaughn* Index establish, and as described more fully below, that CBP met its obligations under the FOIA and conducted searches that were reasonably calculated to locate all

responsive records. CBP properly applied FOIA exemptions to withhold information protected from disclosure by FOIA Exemptions 6 and 7(C), and released any reasonably segregable, nonexempt portion of the records. *See* 5 U.S.C. §§ 552(b)(6), 7(C), and 7(e). Those redactions were necessary and appropriate to protect governmental agency communications and private individuals' personal privacy information and to protect law enforcement techniques and procedures applicable to the ports of entry and border security. Because CBP conducted an adequate search and has not improperly withheld any non-exempt responsive records, there is no genuine issue as to any material fact and summary judgment should be granted in Defendant's favor.

A.   **CBP's Processing and Search Were Reasonably Calculated to Uncover All Responsive Records**

In FOIA cases, "[t]he adequacy of the agency's search is judged by a standard of reasonableness, construing the facts in the light most favorable to the requestor." *Citizens Comm'n on Hum. Rights v. State Dept.*, 45 F.3d 1325, 1328 (9th Cir. 1995) (*citing Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985)). An agency's search for records is considered "adequate" if it was conducted "using methods which can be reasonably expected to produce the information requested." *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (*quoting Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)); *Lahr*, 569 F.3d at 986; *SafeCard Servs. Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (the agency need only show that "the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant."). The "issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Citizens Comm'n on Human Right*, 45 F.3d at 1328; *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) ("[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search."). An agency's search does not need to be exhaustive, but rather, merely reasonable. *Oglesby*,

8

920 F.2d at 68. The agency need not search every record system, but must conduct a good faith, reasonable search of those systems of records likely to possess the requested records. *Id*.

As explained in the Declarations of Patrick A. Howard and Lisa K. Santana Fox, CBP conducted an adequate search for records in response to Plaintiff's FOIA request. Howard Decl., ¶¶ 8-10, 16-22; Declaration of Lisa K. Santana Fox ("Santana Fox Decl.") ¶¶ 5-7. Specifically, the CBP FOIA Division staff considered which CBP databases were likely to hold responsive information based upon a careful review of the content of the request itself and the nature of the records sought. Howard Decl. ¶ 16. The FOIA Division determined that OFO, R&R, Office of the Commissioner Compliments and Complaints Branch, were the offices that most likely maintained records. *Id*. Moreover, OFO then determined the various subcomponents that most likely maintained information responsive to Plaintiff's FOIA request, including the APP, the TTP, and FP&F, all of which were searched and produced records to Plaintiff. *Id*. ¶¶ 17, 21. CBP also provided a publicly available website link to general statistical records maintained by the CBP that reasonably could be deemed responsive to the FOIA Request: https://www.cbp.gov/newsroom/stats/trade. *Id*. ¶ 21.

Even further, FP&F's Director, Lisa K. Santana Fox, also reviewed Plaintiff's request and assigned the search of records to a SEACATS program manager within FP&F at OFO Headquarters. *Id*. ¶ 18; Santana Fox Decl. ¶ 4. Even though SEACATS *only* holds the raw data of the records and does not hold or produce statistics, CBP still conducted a search.[3] *See* Santana Fox Decl. ¶¶ 5-7. When conducting the search, FP&F

---

[3] In addition, FOIA also does not require agencies to create new records, such as creating the purported statistics that Plaintiff's Request seeks. *See Kissinger v. Reporters Comm. For Freedom of the Press,* 445 U.S. 136, 152, (1980); *see also Singh v. Fed. Aviation Admin.*, 783 F. App'x 753, 754 (9th Cir. 2019); *see also Frank v. U.S. Dep't of Just.*, 941 F. Supp. 4, 5 (D.D.C. 1996). Plaintiff's FOIA Requests for "statistics" would require CBP staff to review records, conduct significant research, collect, and then interpret data, and create a new document to respond further, all of which is beyond what
*(footnote cont'd on next page)*

looked for all SENTRI and NEXUS lane violations. Howard Decl., ¶ 19. FP&F used key-word search terms based on a review of Plaintiff's FOIA Request and consideration of what terms FP&F reasonably anticipated would "hit" upon potentially responsive documents. Howard Decl., ¶ 19; Santana Fox Decl. ¶¶ 5-6. No responsive records were located. Santana Fox Decl. ¶ 7.

The CBP has searched all locations and files reasonably likely to contain responsive records, and there is no basis for CBP to conclude that a search elsewhere would reasonably be expected to locate responsive records subject to the FOIA. It has therefore met its search obligations under the FOIA in response to Plaintiff's Request.

**B.    Based on the Stipulated Documents at Issue, CBP Properly Withheld Information under Applicable FOIA Exemptions**

    1.   The Information Redacted by CBP is Exempt under 5 U.S.C. § 552(b)(6) and (b)(7)(C)

FOIA Exemption 6 applies to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).

There are two steps to determine whether Exemption 6 is properly applied. First, as a threshold matter, the records must be determined to be personnel, medical, or similar files. *Reed v. NLRB*, 927 F.2d 1249, 1250-51 (D.C. Cir. 1991). The Supreme Court has directed lower courts to construe "similar files" broadly to apply to any "Government records on an individual which can be identified as applying to that individual." *Id.* at 1251 (*citing United States Dep't of State v. Washington Post Co.*, 456 U.S. 595, 601-02 (1982)). Second, a court must weigh the relevant privacy interests in nondisclosure and the public interests in disclosure and determine "whether, on balance, disclosure would work a clearly unwarranted invasion of personal privacy." *Reed*, 927 F.2d at 1251 (*citing National Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 874 (D.C. Cir.

---

FOIA mandates. CBP nonetheless still searched SEACATS and did not find any responsive records.

1989)). Courts construing Exemption 6 have held that substantial privacy interests cognizable under FOIA include personally identifiable information, such as a person's name, address, phone number, medical history, and Social Security number. *See, e.g., U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 600 (1982) ("Information such as place of birth, date of birth, date of marriage, employment history, and comparable data is not normally regarded as highly personal, and yet ... such information ... would be exempt from any disclosure that would constitute a clearly unwarranted invasion of personal privacy.")

Based on guidance from the Supreme Court, the D.C. Circuit has recognized that only "official information that sheds light on an agency's performance of its statutory duties" merits disclosure under FOIA, while "disclosure of information about private citizens that is accumulated in various governmental files" would "reveal[] little or nothing about an agency's own conduct." *Reed*, 927 F.2d at 1251 (quoting *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press (Reporters Comm.)*, 489 U.S. 749, 773 (1989)); *see also Sellers v. IRS*, 2009 WL 700647, at *14 (D. Ore. 2009) (citation omitted).

Similarly, Exemption 7(C) protects from disclosure "records or information compiled for law enforcement purposes" to the extent that their disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

While Exemptions 6 and 7(C) are similar, they require different analyses, as "Exemption 7(C)'s privacy language is broader than the comparable language in Exemption 6 in two respects." *Reporters Comm.*, 489 U.S. at 756. First, Exemption 6 "requires that the invasion of privacy be '*clearly* unwarranted,' a requirement omitted from the language of Exemption 7(C)." *Lahr*, 569 F.3d at 974 (emphasis in original) (quoting *Reporters Comm.*, 489 U.S. at 756). Second, while Exemption 7(C) prevents disclosure of information that "could reasonably be expected to constitute" an unwarranted invasion of privacy, Exemption 6 restricts disclosure of information that

1   "would constitute" an unwarranted invasion of privacy. *Id.* (citing *Reporters Comm.*, 489
2   U.S. at 755–56).

3         Exemption 7(C), therefore, is *more* protective of privacy interests than Exemption
4   6, as the "threatened invasion" of privacy "need not be as likely as where personnel,
5   medical, or similar files are at issue (Exemption 6)." *Hunt v. FBI*, 972 F.2d 286, 288 (9th
6   Cir. 1992); *see also U.S. Dep't. of State v. Ray*, 502 U.S. 164, 172 (1991) ("[T]he
7   Government's burden in establishing the requisite invasion of privacy to support an
8   Exemption 6 claim is heavier than the standard applicable to Exemption 7(C).");
9   *Pomares v. U.S. Dep't of Veterans Affs.*, 2023 WL 2378939, at *7 (S.D. Cal. Jan. 6,
10  2023) ("Exemption 7(C) is more protective of privacy interests than is Exemption 6
11  ...."). Further, "although both exemptions require the court to engage in a similar
12  balancing analysis, they 'differ in the magnitude of the public interest that is required to
13  override the respective privacy interests protected by the exemptions.'" *Lahr*, 569 F.3d at
14  974 (quoting *U.S. Dep't of Defense v. Fed. Lab. Relations Auth.*, 510 U.S. 487, 496 n.6
15  (1994)).

16        Here, CBP asserted Exemptions 6 and 7(C) to protect name and contact
17  information of government employees, contained within the Memo Trusted Travelers
18  Program (TTP) Handbook (Bates p. 1). UF 36 (Howard Decl. ¶ 27). This document is a
19  memorandum that accompanied the distribution of the Trusted Traveler Program
20  Handbook. *Id.* Government employees, including CBP law enforcement officers, have a
21  protectable privacy interest in their identities that would be threatened by disclosure. *Id.*
22  Thus, for the reasons discussed above and in the agency's declaration, the withholdings
23  under Exemptions 6 and 7(C) are proper.

24        2.    <u>The Information Redacted by CBP is Exempt under 5 U.S.C. § 552</u>
25                 <u>(b)(7)(E)</u>

26        Exemption 7(E) affords protection to law enforcement information that "would
27  disclose techniques and procedures for law enforcement investigations or prosecutions,
28  or would disclose guidelines for law enforcement investigations or prosecutions if such

disclosure could reasonably be expected to risk circumvention of the law." *See* 5 U.S.C. § 552(b)(7)(E).

Courts have construed Exemption 7(E) to encompass withholding of a wide range of techniques and procedures, including certain databases used for law enforcement purposes. *See, e.g., Shapiro v. DOJ,* 893 F.3d 796, 800-01 (D.C. Cir. 2018) (protecting records generated by commercially-available database because release would reveal how agency uses database and results it considers meaningful); *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (affirming withholding of Choicepoint reports made to FBI because particular method by which data is "searched, organized and reported" to FBI is not publicly known, and release of such reports could allow criminals to develop countermeasures to technique); *Gatson v. FBI*, 2017 WL 3783696, at *13 (D.N.J. Aug. 31, 2017) (unpublished disposition) (protecting "non-public database search results and the printouts compiled therefrom").

Here, CBP asserted Exemption 7(E) to protect sensitive information describing secondary land border officer procedures, including specific technique/methods utilized by the officers, the computer systems used by the officers to input information that is in accordance with current policies and procedures for internal security systems, which includes encrypted law enforcement codes and/or terminology, as well as systems utilized by other Agencies. *See Vaughn* Index; UF 37-38 (Howard Decl. ¶¶ 29, 31). Disclosure of this information would reveal law enforcement techniques and procedures as to how CBP operates its ports of entry, which are immigration checkpoints and would enable individuals seeking to violate immigration and customs laws and regulations to circumvent the law by taking proactive steps to alter their behavior to further conceal criminal activity and avoid detection during enforcement operations at the border. *See* Howard Decl. ¶¶ 28-32. Thus, for the reasons discussed above and in the agency's declaration, the withholdings under Exemption 7(E) are proper.

3.      CBP Has Released All Reasonably Segregable Portions of the
        Responsive Records

Under FOIA, "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt . . . ." 5 U.S.C. § 552(b). The agency need not disclose non-exempt portions of a document if "they are inextricably intertwined with exempt portions such that the excision of exempt information would impose significant costs on the agency and produce an edited document with little informational value." *Willamette Indus., Inc. v. United States*, 689 F.2d 865, 867-68 (9th Cir. 1982) (internal quotation marks and citations omitted). The agency must provide a "detailed justification" for its claim of non-segregability, but "is not required to provide so much detail that the exempt material would be effectively disclosed." *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (citation omitted). "The burden is on the agency to establish that all reasonably segregable portions of a document have been segregated and disclosed." *Pac. Fisheries Inc. v. United States*, 539 F.3d 1143, 1148 (9th Cir. 2008) (citing 5 U.S.C. § 552(a)(4)(B), (b)). "The agency can meet its burden by offering an affidavit with reasonably detailed descriptions of the withheld portions of the documents and alleging facts sufficient to establish an exemption." *Pac. Fisheries*, 539 F.3d at 1148 (internal citations omitted); *see Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 779 (9th Cir. 2015).

Here, CBP personnel conducted a careful page-by-page, line-by-line review of all records and disclosed all reasonably segregable information. *See* Howard Decl. ¶ 33. Therefore, CBP has complied with its obligation to segregate and release all reasonably segregable, non-exempt information related to Plaintiff's Request.

**C.    Any Rule 56(d) Request Should Be Denied Because CBP's Supporting Declarations Are Sufficiently Detailed**

Lastly, the parties previously disputed the need for discovery in this case, as addressed in the briefing on Defendant's *Ex Parte* Application for a Protective Order.

14

Dkt. 22-25. The Court responded by amending the summary judgment scheduling order and staying CBP's deadline to respond to written discovery, to allow Plaintiff time to seek discovery pursuant to Fed. R. Civ. P. 56 (d) after the filing of Defendant's motion. *See* Order (Dkt. 25).

To the extent Plaintiff continues to argue that discovery is necessary, Defendant maintains that discovery is unwarranted in this case. Based on the Stipulation of the parties regarding the limited remaining disputes and the evidence now produced in support of Defendant's Motion for Summary Judgment, no additional discovery is required in this FOIA action. The Declarations of Patrick A. Howard and Lisa K. Santana Fox and supporting evidence are sufficient as a matter of fact and demonstrate that Defendant has provided the information sought by Plaintiff's February 11, 2025 written discovery requests. *See* Declaration of Alexander L. Farrell ("Farrell Decl.") ¶¶ 3-5; Exh. 1-2.

The Santana Fox Declaration adequately explains a search was conducted for responsive records in SEACATS, and that the search did not identify any responsive records. Further, the Howard Declaration adequately explains that although SEACATS may hold raw data relevant to Plaintiff's request, it does not hold the statistics requested by Plaintiff and therefore, could not produce such information. UF 14-19. Moreover, the Howard Declaration sufficiently explained the basis for withholding information under the claimed FOIA exemptions. Howard Decl. ¶¶ 25-32. Accordingly, the declarations and the *Vaughn* Index sufficiently explain the FOIA search as well as the basis for the redactions and the claimed exemptions under 5 U.S.C. § 552(b)(6) and (b)(7)(C) and (b)(7)(E). As such, this Court should deny any request by Plaintiff to conduct additional discovery in this case.

## IV.  CONCLUSION

For the reasons discussed above, Defendant CBP requests that the Court grant this motion and enter judgment in its favor.

Dated: April 7, 2025        Respectfully submitted,

BILAL A. ESSAYLI
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section


            */s/ Alexander L. Farrell*
ALEXANDER L. FARRELL
Assistant United States Attorney

Attorneys for Defendant
U.S. Customs and Border Protection

## Local Rule 11-6.2 Certificate of Compliance

The undersigned counsel of record certifies that this memorandum contains 4,795 words and is 15 pages in length, which complies with the word limit set by L.R. 11-6.1 and the page limit set by this Court's Standing Order [Dkt. 8].


Dated: April 7, 2025            */s/ Alexander L. Farrell*

ALEXANDER L. FARRELL
Assistant United States Attorney

16