BILAL A. ESSAYLI
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
ALEXANDER L. FARRELL (Cal. Bar No. 335008)
Assistant United States Attorney
    Federal Building, Suite 7516
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-5557
    Facsimile: (213) 894-7819
    E-mail: Alexander.Farrell@usdoj.gov

Attorneys for Defendant
U.S. Customs and Border Protection

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN M. MANLEY,<br><br>    Plaintiff,<br><br>    v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION,<br><br>    Defendant. | No. 2:24-cv-01427-JAK-SK<br><br>**DEFENDANT U.S. CUSTOMS AND BORDER PROTECTION'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>*(Concurrently filed with Supplemental Declaration of Lisa K. Santana Fox and Response to Separate Statement of Uncontroverted Facts)*<br><br>Hearing Date:  June 2, 2025<br>Hearing Time:  8:30 a.m.<br>Ctrm:  10C<br><br>Honorable John A. Kronstadt<br>United States District Judge |

# TABLE OF CONTENTS

**DESCRIPTION**                                                                                                                                                     **PAGE**

**Contents**

TABLE OF AUTHORITIES ................................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES ....................................... 1

I.    INTRODUCTION ........................................................................................ 1

II.   ARGUMENT ................................................................................................ 2

     A.    CBP's Processing and Search in SEACATS Was Reasonably Calculated to Uncover All Responsive Records ............................... 2

     B.    CBP Redactions Were Proper Under Applicable FOIA Exemptions ........... 6

          1.    Exemptions 6 and 7(c) ................................................................ 6

          2.    Exception 7(e) ............................................................................. 7

     C.    Plaintiff's Defective Rule 56(d) Request is Unnecessary in this FOIA Action ............................................................................................ 8

III.  CONCLUSION ........................................................................................... 10

# TABLE OF AUTHORITIES

DESCRIPTION                                                                                         PAGE

**Cases**

*Am. Oversight v. U.S. Dep't of Just.*,
   401 F. Supp. 3d 16 (D.D.C. 2019) ............................................................................. 1
*Animal Legal Def. Fund v. U.S. Food & Drug Admin.*,
   836 F.3d 987 (9th Cir. 2016) ...................................................................................... 8
*Beltranena v. Clinton*,
   770 F. Supp. 2d 175 (D.D.C. 2011) ........................................................................... 9
*Bigwood v. United States Dep't of Def.*,
   132 F. Supp. 3d 124 (D.D.C. 2015) ........................................................................... 4
*Blackwell v. FBI*,
   646 F.3d 37 (D.C. Cir. 2011) ..................................................................................... 7
*Boyd v. Criminal Div. of U.S. Dep't of Justice*,
   475 F.3d 381 (D.C. Cir. 2007) ................................................................................... 1
*Citizens Comm'n on Human Rights v. Food & Drug Admin.*,
   45 F.3d 1325 (9th Cir. 1995) ................................................................................ 9, 10
*DiBacco v. U.S. Dep't of the Army*,
   795 F.3d 178 (D.C. Cir. 2015) ................................................................................... 4
*Founding Church of Scientology of Wash., D.C., Inc. v. NSA*,
   610 F.2d 824 (D.C. Cir. 1979) ................................................................................... 7
*Frost v. U.S. Dep't of Justice*,
   2018 WL 1626682 (N.D. Cal. Apr. 4, 2018) ............................................................. 1
*Inter-Coop. Exch. v. United States Dep't of Com.*,
   36 F.4th 905 (9th Cir. 2022) ...................................................................................... 4
*Jarvik v. CIA*,
   741 F. Supp. 2d 106 (D.D.C. 2010) ........................................................................... 9
*Johnson v. Exec. Off. for U.S. Atty's*,
   310 F.3d 771 (D.C. Cir. 2002) ................................................................................... 4
*Jud. Watch, Inc. v. Dep't of State*,
   177 F. Supp. 3d 450 (D.D.C. 2016) ........................................................................... 3
*Kowalczyk v. Dep't of Just.*,
   73 F.3d 386 (D.C. Cir. 1996) ..................................................................................... 3
*Lawyers' Comm. for C.R. of San Francisco Bay Area v. U.S. Dep't of the Treasury*,
   534 F. Supp. 2d 1126 (N.D. Cal. 2008) ................................................................. 1, 4
*Malik v. U.S. Dep't of Homeland Sec.*,
   2025 WL 763642 (D.D.C. Mar. 11, 2025) ................................................................ 8
*Mayer Brown LLP v. IRS*,
   562 F.3d 1190 (D.C. Cir. 2009) ................................................................................. 7
*Moore v. Bush*,

    601 F. Supp. 2d 6 (D.D.C. 2009) ............................................................................ 6
*Nat'l Sec. Couns. v. CIA*,
    969 F.3d 406 (D.C. Cir. 2020) ................................................................................ 3
*SafeCard Servs., Inc. v. S.E.C.*,
    926 F.2d 1197 (D.C. Cir. 1991) .............................................................................. 2
*Schrecker v. U.S. Dep't of Justice*,
    217 F. Supp. 2d 29 (D.D.C. 2002) .......................................................................... 8
*Schrecker v. U.S. Dep't of Justice*,
    *349* F.3d 657 (D.C. Cir. 2003) ............................................................................... 8
*U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press*,
    *("Reps.* Comm. II"), 489 U.S. 749 (1989) ............................................................. 7
*Wilbur v. CIA*,
    355 F.3d 675 (D.C. Cir. 2004) ................................................................................ 2
*Yagman v. Brennan*,
    2020 WL 4341592 (C.D. Cal. June 9, 2020) ....................................................... 10

**Statutes**

5 U.S.C. §§ 552(b)(6) ................................................................................................ 2, 10
5 U.S.C. § 552(b)(7)(c) .............................................................................................. 2, 10
5 U.S.C. § 552(b)(7)(e) ................................................................................................... 7

**Rules**

Fed. R. Civ. P. 56(d) ....................................................................................................... 9

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant U.S. Customs and Border Protection ("Defendant" or "CBP") is entitled to summary judgment in its favor on Plaintiff John Manley's claim for failure to conduct an adequate search for responsive records in response to Plaintiff's nine-part FOIA Request, dated September 25, 2023 (the "FOIA Request").

As CBP argued in its moving papers (Dkt. 28), to prevail on a motion for summary judgment, CBP must "demonstrate 'beyond material doubt ... that it has conducted a search reasonably calculated to uncover all relevant documents.'" *Frost v. U.S. Dep't of Justice*, 2018 WL 1626682, at *4 (N.D. Cal. Apr. 4, 2018) (citation omitted). CBP has done so through the declarations of Lisa K. Santana Fox and Patrick Howard. The declarations detail the process by which the CBP searched for records responsive to the FOIA Request by describing what was searched and by whom. Such is enough to establish an adequate search. *See Lawyers' Comm. for C.R. of San Francisco Bay Area v. U.S. Dep't of the Treasury,* 534 F. Supp. 2d 1126, 1131 (N.D. Cal. 2008). Although not mandated by the Court, CBP submits a supplemental declaration of Lisa K. Santana Fox providing further explanation regarding why the SEACATS search using the terms "SENTRI" and "NEXUS" were reasonable and appropriate.

Plaintiff's principal argument in opposition to summary judgment is, essentially, because CBP did not find the "statistics" that he *speculates* CBP may have, Defendant's entire search is inadequate. *See* Opp. (Dkt. 30). However, the adequacy of the search is determined by "the reasonableness of [an agency's] methods, not the quantity or quality of documents it unearths." *Am. Oversight v. U.S. Dep't of Just.*, 401 F. Supp. 3d 16, 22 (D.D.C. 2019); *see also Boyd v. Criminal Div. of U.S. Dep't of Justice*, 475 F.3d 381, 391 (D.C. Cir. 2007) ("the fact that a particular document was not found does not demonstrate the inadequacy of a search.") (citations omitted). And as the agency declarations explain, although SEACATS may hold raw data relevant to Plaintiff's request, it does not hold the statistics requested by Plaintiff.

An agency's affidavit is accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). But that is what Plaintiff attempts to do through his Opposition. This is not sufficient to defeat Defendant's showing on summary judgment. *See, e.g., Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004) (noting that "mere speculation that as yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search for the requested records").

Further, CBP properly processed the records identified through its search and applied appropriate exemptions under the FOIA – specifically Exemptions 6, 7(C), and 7(E). *See* 5 U.S.C. §§ 552(b)(6), 7(C), and 7(E). Plaintiff's Opposition fails to establish that CBP's actions violated the FOIA. And Plaintiff does not actually challenge that CBP has released all reasonably segregable portions of the responsive records. *See generally* Opp. Therefore, CBP has complied with its FOIA obligation related to Plaintiff's FOIA Request. For the reasons explained below and in its moving papers, CBP respectfully requests that the Court grant this motion, and enter judgment in CBP's favor.

## II.   ARGUMENT

### A.   CBP's Processing and Search in SEACATS Was Reasonably Calculated to Uncover All Responsive Records

At no point does Plaintiff argue that the locations CBP searched were improper or not reasonably calculated to uncover potentially responsive records. Instead, the common thread running through Plaintiff's Opposition is its speculative belief that CBP should have conducted *additional* searches and, because it did not conduct each and every search Plaintiff may wish it did, the search was inadequate for only one of the nine sub-parts of the FOIA Request.

The Opposition squarely focuses on Plaintiff's challenge to the FOIA search for "statistics" related to the SEACATS system. *See generally* Opp. Section A. Plaintiff does not challenge any other portion of CBP's search for responsive FOIA records. *See*

2

1  *id.* Plaintiff erroneously claims that CBP "provides insufficient explanation why
2  searching SEACATS using only the terms 'NEXUS' and 'SENTRI' was 'reasonably
3  calculated to uncover all relevant documents,' as FOIA requires." Opp. 6:25-27. Plaintiff
4  baselessly states that CBP "seemingly 'overlooked' certain 'obvious leads' in developing
5  search terms." Opp. 7:19-20. Alternatively, Plaintiff also claims without any basis that
6  the search is SEACATS never occurred. Opp. ¶ 7:3-5. None of these arguments
7  overcome the evidence submitted with Defendant's motion, and further supported by the
8  supplemental declaration of Lisa K. Santana Fox.

9  　　　Plaintiff may not recast his FOIA request by asking CBP to read subsequent
10  modifications into it because the request must be read "as drafted, not as either agency
11  officials or [the requestor] might wish it was drafted." *Nat'l Sec. Couns. v. CIA*, 969 F.3d
12  406, 410 (D.C. Cir. 2020). Plaintiff attaches a self-serving declaration and exhibits to
13  support his theory that CBP *could* have used additional search terms in SEACATS to his
14  liking based on irrelevant communications he had with CBP, outside of the FOIA
15  Request. *See* Dkt. 30-3 (Declaration of John Manley); Dkt. 30-4 (Exhibit A); Dkt. 30-5
16  (Exhibit B). But none of these supposed terms were included in his original FOIA
17  request, nor are they "obvious leads." *See* Dkt. 1 ¶ 41(9) ("statistics" FOIA request).
18  Plaintiff has no plausible evidence that the SEACATS actually maintains statistics of
19  penalties based upon the statutory and regulatory references. *See* Opp. 7:20-24.

20  　　　An agency is not required "to search anew based upon a subsequent clarification."
21  *Kowalczyk v. Dep't of Just.*, 73 F.3d 386, 388 (D.C. Cir. 1996). Imposing ongoing FOIA
22  obligations "each time the agency receives a letter that clarifies a prior request could
23  extend indefinitely the delay in processing new requests." *Id.* "FOIA was not intended to
24  reduce government agencies to full-time investigators" responding to iterative fishing
25  expeditions. *Jud. Watch, Inc. v. Dep't of State*, 177 F. Supp. 3d 450, 457 (D.D.C. 2016).

26  　　　"In general, a FOIA petitioner cannot dictate the search terms for his or her FOIA
27  request. Rather, a federal agency has discretion in crafting a list of search terms that they
28  believe to be reasonably tailored to uncover documents responsive to the FOIA requests.

Where the search terms are reasonably calculated to lead to responsive documents, a court should neither micromanage nor second guess the agency's search." *Bigwood v. United States Dep't of Def.*, 132 F. Supp. 3d 124, 140 (D.D.C. 2015) (emphasis added); *see also Johnson v. Exec. Off. for U.S. Atty's*, 310 F.3d 771, 776 (D.C. Cir. 2002) ("FOIA, requiring as it does both systemic and case specific exercises of discretion and administrative judgment and expertise, is hardly an area in which the court should attempt to micro manage the executive branch."); *see also Inter-Coop. Exch. v. United States Dep't of Com.*, 36 F.4th 905, 911 (9th Cir. 2022) ("For this reason, a FOIA requestor "cannot dictate the search terms for his or her FOIA request."); *DiBacco v. U.S. Dep't of the Army*, 795 F.3d 178, 191 (D.C. Cir. 2015) (an agency "need not knock down every search design advanced by every requester[.]"). "[T]here is no requirement that an agency search every record system, or that a search be perfect ...." *See Lawyers' Comm. for C.R. of San Francisco Bay Area*, 534 F. Supp. 2d at 1130 (citations omitted).

      Against this backdrop, the declarations of Lisa K. Santana Fox establish that CBP's search of the SEACATS database was adequate and reasonable. FP&F's Director, Lisa K. Santana Fox expressly states in her initial declaration that FP&F conducted a search of SEACATS by using the terms "SENTRI" and "NEXUS." Santana Fox Decl. ¶¶ 5-6. Prior to conducting the search, FP&F reviewed Plaintiff's request and assigned the search of records to a SEACATS program manager within FP&F at OFO Headquarters. Howard Decl. ¶ 18; Santana Fox Decl. ¶ 4. Even though SEACATS *only* holds the raw data of the records and does not hold or produce statistics, CBP still conducted a search. *See* Santana Fox Decl. ¶¶ 5-7. When conducting the search, FP&F looked for all SENTRI and NEXUS lane violations. Howard Decl., ¶ 19. FP&F used key-word search terms based on a review of Plaintiff's FOIA Request and consideration of what terms FP&F reasonably anticipated would "hit" upon potentially responsive documents. Howard Decl., ¶ 19; Santana Fox Decl. ¶¶ 5-6. No responsive records were located. Santana Fox Decl. ¶ 7.

      Moreover, the Supplemental Declaration by Lisa K. Santana Fox, provides further

explanation on why the SEACATS search using terms SENTRI and NEXUS were reasonable and appropriate. Additional parameters were set by dates and incident type requested, meaning the citation issued. Suppl. Fox Decl. ¶¶ 7-10. Once the raw data was populated, FP&F proceeded to add a filter for "SENTRI" and "NEXUS" in three different areas, including the "incident comments," "additional language field," and "comment history." *Id*. ¶ 7. FP&F searched the "incident comments," which provides a short description of the incident, with the same search terms of "SENTRI" and "NEXUS." *Id*. ¶ 8. FP&F further searched in the "additional language field" that is populated on the 5955A penalty notice to the violator with the terms "SENTRI" and "NEXUS." *Id*. ¶ 9. FP&F also searched in the "comment history" which is also located within the incidents, with the search term "SENTRI" and "NEXUS." *Id*. ¶ 10. Based on the Search, FP&F did not find "Statistics reflecting the total number of fines and/or demands for payment issued by CBP for unauthorized use of the SENTRI lane, the dollar amount of each fine, the location where such fines were incurred, and the frequency of fines issued since January 1, 2020." *Id*. ¶ 11; Santana Fox Decl. ¶ 7.

   Next, Plaintiff disputes the basis of whether SEACATS holds "statistics" compared to just holding "raw data" Opp. 10:1-6. Plaintiff attempts to claim that a DHS report from the Office of Inspector General (OIG) confirms his baseless theory that SEACATS regularly produces statistics. *See* Opp. 11:10-17. But what the OIG Report that Plaintiff attached to the Opposition actually states, in Appendix A, is that OIG engaged in a comprehensive and exhaustive process, outside of the duties under FOIA to create the statistics that Plaintiff relies on. Specially DHS OIG did the following in conducting their audit: they interviewed personnel at various CBP offices, conducting virtual walkthroughs of the system to understand how CBP personnel capture data, and reviewing relevant standard operating procedures; they reviewed the case history to determine the statuses of these cases and whether the statute of limitations had expired; assessed the reliability of SEACATS data by performing electronic testing, reviewing existing information about the data and the system that produced it, and interviewing

agency officials knowledgeable about the data; and then conducted an audit according to generally accepted government auditing standards. *See* Dkt. 30-11 (Ex. E to Vakili Decl.), at 12. The OIG Report demonstrates that OIG's audit did not merely rely on any existing statistics, nor did their audit, which included a SEACATS search, create statistics in SEACATs that are now subject to FOIA. And Plaintiff's FOIA search is not asking for the data behind the audit or anything of the like.

The agency is the ultimate expert of its own records and holds the burden to demonstrate the appropriateness of the methods used to carry out the FOIA search. The Declarations of Patrick Howard and Lisa K. Santana Fox, explain, in detail, the locations searched, and the search terms used by CBP to locate records potentially responsive to the "statistics" portion of the FOIA Request. Records were justifiably not found and as such the declarations establish that CBP's search was adequate.

### B. CBP Redactions Were Proper Under Applicable FOIA Exemptions

#### 1. Exemptions 6 and 7(c)

Here, the Opposition does not actually challenge the claimed Exemptions under 6 and 7(C) asserted to protect name and contact information of government employees. *See* Opp. 21-22. Rather, without any case authority to support the position, Plaintiff seeks disclosure of the employment titles disclosed in the document titled as "Memorandum re Implementation of Trusted Traveler Programs Handbook." However, this limited disclosure does not overcome the basis for the asserted Exemptions.

As stated in the motion, CBP asserted Exemptions 6 and 7(C) to protect name and contact information of government employees, contained within the Memo Trusted Travelers Program (TTP) Handbook (Bates p. 1). Howard Decl. ¶ 27. This document is a memorandum that accompanied the distribution of the Trusted Traveler Program Handbook. *Id*. Government employees, including CBP law enforcement officers, have a protectable privacy interest in their identities that would be threatened by disclosure. *Id*. *Moore v. Bush*, 601 F. Supp. 2d 6, 14 (D.D.C. 2009) ("Generally, government employees and officials, especially law enforcement personnel, have a privacy interest in

protecting their identities because disclosure 'could subject them to embarrassment and harassment in the conduct of their official duties and personal affairs.'" (citation omitted)). Likewise, third parties have a privacy interest in controlling their personal information (including their names) and preventing its unrestricted disclosure. *U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press ("Reps. Comm. II")*, 489 U.S. 749, 763 (1989). Plaintiff does not identify any countervailing public interest; he only *speculates* that the Memo *could* include job titles. *See* Opp. 21:20; 22:1-3. Without any such countervailing interest, Exemption 6 justifies withholding this information. Thus, for the reasons discussed above and in the agency's declaration, the withholdings under Exemptions 6 and 7(C) are properly applied.

### 2. Exception 7(e)

Plaintiff claims that CBP improperly withheld records under Exemption 7(e) for the TTP Handbook in Sections 14.1 and 14.2 and SENTRI No Tag Override were improper. Opp. 18-19; 21. But Plaintiff's arguments are insufficient to overcome the FOIA protections. CBP invoked Exemption 7(e), which exempts records compiled for law-enforcement purposes when their release "would disclose techniques and procedures for law enforcement investigations or prosecutions[.]" 5 U.S.C. § 552(b)(7)(e).

This exemption "sets a relatively low bar" for withholding: "Rather than requiring a highly specific ... showing [of] how the law will be circumvented," the agency need only "demonstrate logically how the release of the requested information might create a risk of circumvention of the law.'" *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009)). While exemption 7(e) generally does not apply to "routine techniques and procedures already well known to the public," *Founding Church of Scientology of Wash., D.C., Inc. v. NSA*, 610 F.2d 824, 832 n.67 (D.C. Cir. 1979) (citation omitted), it **does** protect techniques and procedures that are not widely known and could be exploited by individuals seeking to evade law-enforcement scrutiny. CBP asserted the exemption to protect sensitive information describing secondary land border officer procedures, including specific

technique/methods utilized by the officers, the computer systems used by the officers to input information that is in accordance with current policies and procedures for internal security systems, which includes encrypted law enforcement codes and/or terminology, as well as systems utilized by other Agencies. *See Vaughn* Index; Howard Decl. ¶¶ 29, 31. The redacted information consists of law enforcement techniques, and disclosing it could facilitate circumvention of the law. Courts have held that CBP's security measures for records of factors and priorities CBP considers when evaluating applicants for Trusted Traveler Programs are protected. *See Malik v. U.S. Dep't of Homeland Sec.*, 2025 WL 763642, at *9 (D.D.C. Mar. 11, 2025). Thus, CBP properly applied Exemption 7(C).

### C. Plaintiff's Defective Rule 56(d) Request is Unnecessary in this FOIA Action

Lastly, Plaintiff requests the Court allow him to engage in discovery, which was stayed by the Court. *See* Opp. 5:19-26. Without filing a proper motion, Plaintiff asks the Court to issue an order compelling: (1) Defendant to respond to discovery regarding CBP's methods for inputting and maintaining SENTRI enforcement data in its databases, including SEACATS, as well as the functionality of SEACATS to generate data, (2) a conference with Plaintiff regarding search terms after responding to discovery, (3) compelling another FOIA search after the conferral process is complete and (4) then engage in renewed motions for summary judgment. *Id*. Plaintiff's far-reaching request exceeds the needs of this case and undermines the purpose of FOIA. Plaintiff's request is an improper attempt to amend his FOIA request and is trying to create a "lawsuit within a lawsuit" as a basis to continue this FOIA litigation.

"Although discovery is generally unavailable in FOIA cases, courts sometimes permit discovery if an agency does not adequately explain its search process or if the agency submits a declaration in bad faith." *See Schrecker v. U.S. Dep't of Justice*, 217 F. Supp. 2d 29, 35 (D.D.C. 2002), *aff'd*, 349 F.3d 657 (D.C. Cir. 2003); *see also Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 989 (9th Cir. 2016).

1 However, "[i]f the affidavits contain reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption, the district court need look no further." *Citizens Comm'n on Human Rights v. Food & Drug Admin.*, 45 F.3d 1325, 1329 (9th Cir. 1995).

First, Plaintiff **admits** he does not need additional discovery and claims he has "provide[d] sufficient disputes of material fact to defeat Defendant's summary judgment motion…" Opp. 12:11-13. Discovery should not be granted simply for academic and hypothetical inquiry. Rule 56(d) is only allowed if "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). For this first reason, Plaintiff's discovery request should be denied.

Second, when an agency's declarations are found to be insufficient, courts often order the submission of supplemental information rather than resorting to discovery. *See, e.g., Beltranena v. Clinton*, 770 F. Supp. 2d 175, 187 (D.D.C. 2011) (denying requests for discovery and in camera review and instead ordering agency to supplement affidavits to establish that it conducted adequate searches and to provide particularized explanations for its segregability determinations); *Jarvik v. CIA*, 741 F. Supp. 2d 106, 122 (D.D.C. 2010) ("Even if an agency's affidavits regarding its search are deficient, courts generally do not grant discovery but instead direct the agency to supplement its affidavits."). The Supplemental Declaration of Lisa K. Santana Fox is submitted with this Reply in order to provide additional information to the Court and to the Plaintiff regarding the FOIA search that was conducted within SEACATS. *See* Suppl. Santana Fox Decl. ¶¶ 4-11. Plaintiff's request for discovery should be denied for this additional reason.

Third, Defendant effectively responded to the written discovery served earlier in this lawsuit through the declarations and the *Vaughn* Index. Plaintiff presented seven interrogatories that sought information regarding the adequacy of the FOIA search, as well as an explanation of the basis for the redactions established in the TTP Handbook.

9

*See generally* Farrell Decl. Exh. 1. For example, Plaintiff's first interrogatory requests a description of the "computer systems and/or databases in which [CBP employees] input, maintain, and/or store data regarding fines collected and/or demands for payment." *Id*. Further, Plaintiff's third, fourth, and fifth interrogatories seek information regarding information about the use of the SEACATS by CBP, the applicability of finding statistics within SEACATS, as well as inquiring into whether CBP searched the SEACATS for responsive records in response to the FOIA request. *Id*. Second, Plaintiff made a single request for admission to CBP seeking an affirmative statement of whether CBP conducted a search for responsive records within the SEACATS. *See* Farrell Decl. Exh. 2.

Plaintiff does not need further discovery from CBP because the evidence presented with this motion adequately addresses the issues identified by Plaintiff. Specifically, the Declarations of Lisa K. Santana Fox adequately explain that FP&F did conduct a search for responsive records in SEACATS, and that the FOIA search did not identify any responsive records. Further, the Declaration of Patrick Howard explains that SEACATS holds the raw data of the records and does not hold or produce statistics. [cite]. Moreover, the Howard Declaration sufficiently explains the basis for the claimed FOIA exemptions. Howard Decl. ¶¶ 25-32. The Howard Declaration and the *Vaughn* Index sufficiently explain the FOIA search as well as the basis for the redactions and the claimed exemptions under 5 U.S.C. § 552(b)(6) and (b)(7)(C) and (b)(7)(E). As such, this Court should deny any request by Plaintiff to conduct additional discovery in this FOIA action and resolve this case on the pending motion for summary judgment. *See Yagman v. Brennan*, 2020 WL 4341592, at *14 (C.D. Cal. June 9, 2020) (denying a Rule 56(d) request after determining the FOIA declarations were sufficient) (citing *Citizens Comm'n on Human Rights*, 45 F.3d at 1329).

### III. CONCLUSION

For the reasons discussed above and for the reasons in the motion, Defendant CBP requests that the Court grant this motion and enter judgment in its favor.

Dated: May 19, 2025

Respectfully submitted,

BILAL A. ESSAYLI
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section

    /s/Alexander L. Farrell
ALEXANDER L. FARRELL
Assistant United States Attorney

Attorneys for Defendant

## Local Rule 11-6.2 Certificate of Compliance

The undersigned counsel of record certifies that this Reply Brief contains 3,464 words and is 10 pages in length, which complies with the word limit set by L.R. 11-6.1 and the page limit set by this Court's Standing Order [Dkt. 8].

Dated: May 19, 2025

    /s/ Alexander L. Farrell
ALEXANDER L. FARRELL
Assistant United States Attorney