BILAL A. ESSAYLI
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
ALEXANDER L. FARRELL (Cal. Bar No. 335008)
Assistant United States Attorney
    Federal Building, Suite 7516
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-5557
    Facsimile: (213) 894-7819
    E-mail: Alexander.Farrell@usdoj.gov

Attorneys for Defendant
U.S. Customs and Border Protection

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN M. MANLEY,<br><br>    Plaintiff,<br><br>    v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION,<br><br>    Defendant. | No. 2:24-cv-01427-JAK-SK<br><br>**DEFENDANT CBP'S SUPPLEMENTAL RESPONSE TO THE COURT'S ORDER [DKT. 34]**<br><br>*(Concurrently filed with the Additional Supplemental Declaration of Lisa K. Santana Fox)*<br><br>Honorable John A. Kronstadt<br>United States District Judge |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant U.S. Customs and Border Protection ("Defendant" or "CBP") is entitled to summary judgment on Plaintiff John Manley's claim for failure to conduct a reasonable search in response to Plaintiff's nine-part FOIA Request, dated September 25, 2023 (the "FOIA Request").

On June 2, 2025, the Court held a hearing regarding CBP's Motion for Summary Judgment. Referencing *Ctr. for Investigative Reporting v. United States Dep't of Just.*, 14 F.4th 916 (9th Cir. 2021), the Court ordered the government to file a supplemental declaration addressing whether a FOIA search can be run on SEACATS that would produce raw data that could then be used to generate the "statistics" requested in Categories 6 and/or 9 of Plaintiff's FOIA request. Dkt. 34 (Court's Order). The Court also ordered the government address whether the terms "SENTRI" and "NEXUS" are actually used by CBP officers when they input SENTRI or NEXUS violation data into CBP's case management system.[1] Dkt. 34.

The Court also ordered CBP to present for *in camera* review the unredacted versions of its FOIA document productions. Dkt. 34. The CBP complied with this order on June 13, 2025. Dkt. 35 (Notice of Lodgment).

As explained below, CBP now submits an Additional Supplemental Declaration of Lisa K. Santana Fox providing further explanation regarding the process for creating incident reports for the SEACATS system, why the SEACATS search using the terms "SENTRI" and "NEXUS" were the only reasonable and appropriate terms, why statistical data cannot be auto generated through a report and cannot be created in response to the FOIA requests. *See* Additional Supplemental Declaration of Lisa K. Santana Fox ("Add. Suppl. Fox Decl."). The Declaration fully explains why CBP did not

---

[1] Defendant respectfully provides this supplemental response to 1) attach the Additional Supplemental Declaration of Lisa K. Santana Fox; and 2) to provide an analysis of *Ctr. for Investigative Reporting*.

1

find "statistics" within the SEACATS and cannot create the requested "statistics." Add. Suppl. Fox Decl. ¶¶ 20-21.

Accordingly, the Court should grant Defendant's Motion for Summary Judgment and enter judgment in Defendant's favor.

## II. ARGUMENT

### A. The Ninth Circuit's Ruling in *Ctr. for Investigative Reporting*

The Ninth Circuit addressed in *Ctr. for Investigative Reporting* whether the ATF was required to produce and or create "statistical aggregate data regarding firearms traffickers and trafficking channels, or firearms misuse, felons, and trafficking investigations." *Ctr. for Investigative Reporting*, 14 F.4th at 926. The government argued and the district court agreed, that the use of a query in a database would require the creation of a new agency record, which FOIA does not afford. *See id.* at 922.

The Ninth Circuit went through an exhaustive and detailed analysis of whether statistical aggregate data was required to be produced. *See id.* at 937. The Ninth Circuit first determined that the Electronic Freedom of Information Act Amendments of 1996 ("E-FOIA") expanded the definition of a "search" and the means of how an agency can sort and compile responsive information in its electronic databases. *See id.* at 938-39. Reaching this point, the Ninth Circuit, with a limited district court record, could only hypothesize to two options to determine whether the ATF could produce statistical aggregate data to respond to that FOIA request:

> First, it could search the FTS database for records tagged with the relevant close-out codes and produce the resulting traces or list of traces, with any necessary redactions, for CIR to tabulate. Although the 2012 Tiahrt Rider prohibits ATF from using appropriated funds to do so, the Rider is not a withholding statute for purposes of FOIA, and ATF does not contend that any of FOIA's other limited exemptions apply. Second, ATF could produce the precise statistical aggregate data that CIR seeks, with no further counting or analysis required, if, for example, a query or queries for the relevant close-

2

        out codes produces a "hit count" reflecting the number of records involving a firearm traced to law enforcement, the number of matching records is contained in FTS metadata, or if the database produces an otherwise responsive result separate from the trace data itself. Because the Tiahrt Rider permits the disclosure of such statistical aggregate data, this second option would avoid any unauthorized use of funds.

*See id.* at 940.

        However, the Court noted that "[w]ithout a further understanding of the specifics of the FTS database, however, these are only theoretical possibilities." *Id*. In essence, the Ninth Circuit was unable to decide whether the statistical information *about* the requested records already existed in ATF's database. The Ninth Circuit remanded to the district court to allow ATF to further explain the nature of its database and determine whether the FOIA search query would yield the responsive information the plaintiff sought. *Id.* at 940.

        After remand, the government voluntarily released additional information, negotiated fees and costs, and the parties dismissed the case. *See Ctr. for Investigative Reporting v. United States Dep't of Just.,* 3:17-cv-06557-JSC, ECF No. 67 (Stipulation to Continue Case Management Conference) (N.D. Cal. Jun. 21, 2022); *see also* ECF No. 73 (Stipulation Regarding Settlement and Dismissal) (N.D. Cal. Oct. 6, 2022). After remand, the district court did not consider briefing on the ATF's ability to produce statistical aggregate data.

        **B.**    ***Ctr. For Investigative Reporting* Instructs That CBP Does Not Have to Create Information and Data That Does Not Already Exist**

        The use of a query to search for and extract a particular arrangement or subset of existing data from an electronic database does not amount to creation of a "new" agency record under the FOIA ***so long as*** the relevant information and data fields ***already exist*** in the database maintained by the agency. *Ctr. for Investigative Reporting*, 14 F.4th at 938-39 (emphasis added). In response to the Court's first question, CBP does not have

3

the "statistics" that the Plaintiff seeks in his FOIA request because the relevant statistics, information, and data fields *do not already exist* in SEACATS or in any of the agency's analytical tools.

Because SEACATS is solely a repository for case files, in order to conduct a search within SEACATS, the program manager must use a separate program called BEMSCOGNOS, which is a web-based suite of business intelligence and performance management software based on IBM Cognos Analytics software. Add. Suppl. Fox Decl. ¶ 8. The BEMSCOGNOS software allows FP&F personnel to pull certain case file information, such as CBP did for the instant FOIA request, to search for "NEXUS" and "SENTRI" lane violations. *Id*. ¶ 9. BEMSCOGNOS software does not allow FP&F personnel to generate the type of statistical data that Plaintiff demands.

First, CBP cannot simply conduct an automatic search in the BEMSCOGNOS software for all records tagged with "NEXUS" and "SENTRI" lane violations and produce the resulting lists for Plaintiff to tabulate. As explained in the additional declaration, the information in the SEACATS is not maintained in a user-friendly manner that would allow for such a search, compared to an individual using Google or Westlaw search engines. Before CBP any search in BEMSCOGNOS can be conducted, CBP Officers ("CBPO") use SEACATS to create an electronic incident report to initiate any enforcement action. When CBPOs create a new incident report, they input information such as property description, violator description, and violation type. Add. Suppl. Fox Decl. ¶ 5. The CBPO will also add comments and notes detailing the incident type, for example, noting that an agricultural violation (i.e. bringing prohibited agricultural products into the United States) occurred while a vehicle was in the "NEXUS" and /or "SENTRI" lane. *Id*. The CBPOs use their discretion and judgment to accurately describe the reported incident, and do not use standardized verbiage to identify only lane violations when creating the incident report. *Id*. Also, "NEXUS" and "SENTRI" lane violations do not fall under a specific regulation. *Id*. ¶ 17. CBPOs commonly cite to broad regulatory provisions when reporting lane violations. Therefore,

1  searching for those provisions will capture various other unrelated penalties, for
2  example, agricultural violations like smuggling plant or animal products across the port
3  of entry using "NEXUS" and "SENTRI" lanes. *Id*. ¶¶ 5, 17. Accordingly, FP&F and/or
4  FOIA personnel would need to manually review each case file identified by such a
5  search to determine if the incident report records containing the words NEXUS or
6  SENTRI are actually responsive to this FOIA request. Add. Suppl. Fox Decl. ¶ 17.

7        As applied here, after using the BEMSCOGNOS software and applying the key-
8  word search terms of "SENTRI" and "NEXUS," the FP&F personnel manually searched
9  the "incident comments," which provides a short description of the incident, with the
10 same search terms of "SENTRI" and "NEXUS" to find responsive cases. Add. Suppl.
11 Fox Decl. ¶ 12. Then the FP&F personnel further searched the "additional language
12 field" that is populated on the 5955A penalty notice with the terms "SENTRI" and
13 "NEXUS" to find responsive cases related to "SENTRI" and "NEXUS" lane violations.
14 *Id*. ¶ 13. The FP&F also manually searched in the "comment history" in the incident
15 report, with the search term "SENTRI" and "NEXUS" to find responsive cases. *Id*. ¶ 14.

16       Once FP&F completed its manual search within the three locations, FP&F
17 generated reports that referenced 789 closed case files with "NEXUS" and "SENTRI"
18 violations from January 1, 2020, to April 15, 2024. Add. Suppl. Fox Decl. ¶ 15. The
19 search did not include open cases as these cases are ongoing and to disclose them would
20 violate 19 C.F.R. § 103.32. *Id*. Further, CBP does not have an auto-generating report
21 option within SEACATS or within BEMSCOGNOS. *Id*. ¶ 16. Instead CBP must use
22 custom tools to help it conduct manual searches. *Id*. This means that "statistical
23 aggregate data" cannot be derived from any "report" and that such data **does not** already
24 exist in the database maintained by the agency. This shows that CBP used reasonable
25 methods to conduct a query search, but no responsive records could be produced.

26       Second, the CBP cannot produce the precise statistical aggregate data that Plaintiff
27 seeks, with no further counting or analysis required. Because the SEACATS and the
28 BEMSCOGNOS software cannot auto-generate information in a statistical format

regarding "NEXUS" and "SENTRI" lane violations; these systems do not have any such statistical reporting option. Add. Suppl. Fox Decl. ¶ 19. Any statistical aggregate data made by FP&F personnel for the purpose of responding to this FOIA request would be creating a new agency record, not just submitting a query to a database. *Id*. As such, Plaintiff's FOIA Requests for "statistics" would require CBP staff to review records, conduct significant research, collect, and then interpret data, and create a new document to respond further, all of which is beyond what FOIA mandates. *See Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136, 151–52 (1980); *see also Singh v. Fed. Aviation Admin.*, 783 F. Appx 753, 754 (9th Cir. 2019) (same).

The three declarations submitted by Lisa K. Santana Fox provide the necessary information for this Court to find that the conducted a reasonable search. *See* Add. Suppl. Fox Decl.; *see also* Dkt. 28-4 (first declaration); *see also* Dkt. 31-1 (supplemental declaration). Moreover, based on CBP's process of collecting and maintaining records, there is no evidence to justify requiring the creation of new "statistical aggregate data" to respond to the subject FOIA request. No records were found, and the declarations establish that CBP's search was reasonable.

### C. CBP's Search Terms in its Databases Were Reasonably Calculated to Uncover All Responsive Documents

The Court requested a further explanation from CBP on whether the terms "NEXUS" and "SENTRI" are actually used when CBPOs input SENTRI or NEXUS violation data into CBP's case management system.[2] *See* Dkt. 34.

As discussed in the additional declaration, the CBPOs use their discretion and judgment to accurately describe the reported incident, and do not use standardized verbiage to identify only lane violations when creating the incident report. Add. Suppl. Fox Decl. ¶ 5. However, the CBPOs normally use the terms when inputting direct or

---

[2] Plaintiff's Opposition complains that CBP "overlooked certain obvious leads" in developing its search terms. *See* Dkt. 30 ("Opp.") 7:15-25. At the hearing, Plaintiff's counsel argued that CBP should have instead searched using statutory and regulatory citations, as well as using the name of a violation form.

indirect reports (i.e. agriculture violations) of "NEXIS" and "SENTRI" lane violations, and they were the most reasonable and effective search terms for CBP to conduct their search.

When a CBPO creates the incident report, SEACATS auto-generates a CBP Form 5955A, Notice of Penalty or Liquidated Damages Incurred and Demand for Payment (Form 5955A). Add. Suppl. Fox Decl. ¶ 6. The Form 5955A is the end product of the SEACATS incident report and is used to put the violator on notice of the enforcement action. *Id*. The Form 5955A is the standard notice CBP uses for **all violations under CBP's authority**, 19 U.S.C. §§ 1618, 1623 and is not limited to "NEXUS" and "SENTRI" lane violations. *Id*. ¶ 7. The SEACATS thus does not allow CBP personnel to conduct searches of the Form 5955A, because a search using the term "Form 5955A" would essentially yield every violation notice of any kind issued under CBP's authority; it is not a "search" at all. *Id*. ¶ 7. Even if the SEACATS allowed for a search using the term "Form 5955A," moreover, it would not yield responsive documents for "NEXUS" and "SENTRI" lane violations alone because of the form's very broad use within CBP. *Id*. It would be somewhat akin to searching for "CBP" or "violation."

Further, the statutory violations referenced in the FOIA request, 19 U.S.C. §§ 1618, 1623, address the procedure that violators may use to petition for remission or mitigation of their goods, vessels, vehicles, aircraft, or baggage. Add. Suppl. Fox Decl. ¶ 18. Additionally, the statutory sections 19 U.S.C. §§ 1618, 1623 are used on every Form 5955A because CBP's custom authority derives from Title 19. *Id*. Therefore, CBP conducting a FOIA search using these specific statutes as terms will not produce a responsive search within SEACATS for "NEXUS" and "SENTRI" lane violations. *Id*.

The motion, the reply brief, and the declarations of Lisa K. Santana Fox and Patrick Howard, all establish that the locations searched, and the search terms used by CBP to locate records potentially responsive to the "statistics" portion of the FOIA Request, were entirely reasonable.

7

### III.  CONCLUSION

For the reasons discussed above, and as discussed in the motion, the briefs, and in the declarations, Defendant CBP requests that the Court grant this motion and enter judgment in its favor.

Dated: June 16, 2025               Respectfully submitted,

                                                    BILAL A. ESSAYLI
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section

                                                */s/ Alexander L. Farrell*
ALEXANDER L. FARRELL
Assistant United States Attorney

Attorneys for Defendant U.S. Customs and Border Protection

### Local Rule 11-6.2 Certificate of Compliance

The undersigned counsel of record certifies that this Supplemental Response contains 2,408 words and is 8 pages in length, which complies with the word limit set by L.R. 11-6.1 and the page limit set by this Court's Standing Order [Dkt. 8].

Dated: June 16, 2025               */s/ Alexander L. Farrell*
                                                ALEXANDER L. FARRELL
Assistant United States Attorney